Jacob A. Walker (SBN 271217)
Jeffrey C. Block (*pro hac vice* forthcoming)
Stephen J. Teti (*pro hac vice* forthcoming)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Scott Kuhne, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>Gossamer Bio, Inc.; Sheila Gujrathi, M.D.; Bryan Giraudo; Faheem Hasnain; Joshua H. Bilenker, M.D.; Kristina Burow; Russell Cox; Thomas Daniel, M.D.; Renee Gala; Otello Stampacchia, Ph.D.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; SVB Leerink LLC; Barclays Capital Inc.; and Evercore Group L.L.C.,<br><br>        Defendants. | Case No.  **'20 CV0649 DMS MDD**<br><br>**Class Action Complaint for Violations of the Federal Securities Laws**<br><br>*Jury Trial Demanded* |

Plaintiff Scott Kuhne ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**Nature and Summary of Action**

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Gossamer Bio, Inc. ("Gossamer" or the "Company") common stock between February 8, 2019 and December 13, 2020, inclusive (the "Class Period"), and/or who acquired Gossamer shares pursuant or traceable to Gossamer's Registration Statement and Prospectus in connection with its February 8, 2019 Initial Public Offering (the "IPO"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act") and under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      Gossamer is a clinical-stage biopharmaceutical company focused on discovering, acquiring, developing, and commercializing therapeutics in the disease areas of immunology, inflammation, and oncology.  The Company's lead drug, GB001, is an oral antagonist of prostaglandin D2 receptor 2, or DP2, in development for the treatment of moderate-to-severe eosinophilic asthma and other allergic conditions.  Gossamer's GB001 product is in Phase 2 development for asthma and rhinosinusitis.

3.      In the IPO, Gossamer and the underwriters sold 19,837,500 shares of common stock at an initial public offering price of $16.00 per share, for a total offering price of $317.4 million.  Proceeds to the Company, net of underwriting discounts and commissions, were $256.68 million.  Defendants in this action consist of Gossamer, Gossamer executives and directors who signed the Registration Statement, and the underwriters to the IPO (collectively, "Defendants").

4.      In violation of the 1933 Act, Defendants issued untrue statements of material facts and omitted to state material facts required to be stated from the Registration Statement and accompanying and incorporated offering materials that Gossamer filed with the SEC in support of the IPO.  Specifically, Defendants misrepresented, *inter alia*, that: (1) a separate, 248-patient Phase 2 trial showed that neither GB001 nor asthma treatment montelukast had met the primary endpoint for improvement in asthma symptoms because of "study design and execution issues

related to patient selection, including adherence"; and (2) that Novartis, who had a product that would compete against GB001 in the works, had a successful Phase 2 trial that had clinically validated DP2 antagonism.

5.      Defendants are strictly liable for any and all material untrue statements or omissions in the IPO materials.  Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties.  *See* Item 303 of SEC Reg. S-K, 17 C.F.R. § 229.303(a)(3)(ii) (requiring that the materials incorporated in a Registration Statement disclose all "known trends or uncertainties" reasonably expected to have a material unfavorable impact on the Company's operations).  Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on Gossamer's business.  Defendants failed to fulfill this obligation.  Unfortunately for investors who purchased Gossamer's shares pursuant and/or traceable to the IPO, however, the truth did not begin to emerge until after the IPO was complete.

6.      Over the next several months, and in violation of the Exchange Act, Gossamer continued to publicly state that "DP2 antagonism has been clinically validated by Novartis' oral DP2 antagonist, fevipiprant," and that its earlier GB001 trial failure was "primarily related to study design and execution issues related to patient selection."  Based on these representations, Gossamer's stock price soared to a high of $27.15 per share.

7.      In the materials accompanying the IPO and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants misrepresented and/or failed to disclose to investors: (1) the reasons for Gossamer's GB001 trial failures; (2) the purported clinical validation of Novartis' oral DP2 antagonist; and (3) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

8.      In October 2019, Novartis announced that its fevipiprant product had failed to improve long function in two Phase 3 trials, as measured by FEV1, over placebo.

9.      On December 16, 2019, Novartis announced that it was terminating the development of its DP2 antagonist fevipiprant for asthma after it failed another pair of Phase 3 clinical trials.

10.     Analysts noted that "[w]hen Gossamer raised $276 million in an IPO earlier in [2019], it said Novartis' fevipiprant phase 2 had clinically validated DP2 antagonism. *That statement now looks premature, particularly when viewed in light of the failures of other DP2 drugs.*"[1]

11.     On this news, the stock plummeted from a December 13, 2019 closing price of $25.37 per share to $15.96 per share, a one day drop of $9.41 or over 37%.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### Jurisdiction and Venue

13.     The federal law claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under and pursuant to §§ 11, 12(a)(2), and 15 of the 1933 Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o).

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, § 27 of the Exchange Act, 15 U.S.C. § 78aa, and § 22 of the 1933 Act.

15.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

---

[1] https://www.fiercebiotech.com/biotech/novartis-asthma-drug-fails-phase-3-raising-doubts-about-gossamer-s-prospects (last visited on April 2, 2020).

16.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

17.     In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**Parties**

18.     Plaintiff Scott Kuhne, as set forth in his Certification filed contemporaneously herewith, acquired shares of Gossamer common stock at artificially inflated prices, pursuant and/or traceable to the IPO, and has been damaged.

19.     Defendant Gossamer Bio, Inc. is incorporated under the laws of Delaware, with its principal place of business at 3013 Science Park Road, San Diego, CA 92121.  Its common stock trades on the Nasdaq stock exchange under the symbol GOSS.

20.     Defendant Sheila Gujrathi, M.D., is the Co-Founder and Chief Executive Officer of Gossamer, and has served in those capacities at all times relevant hereto.  Dr. Gujrathi signed the false and misleading Registration Statement.

21.     Defendant Bryan Giraudo is Gossamer's Chief Financial Officer, and has served in that capacity at all times relevant hereto.  Mr. Giraudo signed the false and misleading Registration Statement.

22.     Defendants Gujrathi and Giraudo are named as Defendants for violations of all counts asserted herein, and are sometimes referred to as the "Management Defendants."  The Management Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and the investing public, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

positions and access to material, non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.  The Individual Defendants are therefore liable for the misstatements and omissions plead herein.

23.     Defendant Faheem Hasnain is the Executive Chairman of the Board of Directors, and he signed the false and misleading Registration Statement,

24.     Defendant Joshua H. Bilenker, M.D., is a Director on Gossamer's Board of Directors, and he signed the false and misleading Registration Statement.

25.     Defendant Kristina Burow is a Director on Gossamer's Board of Directors, and she signed the false and misleading Registration Statement.

26.     Defendant Russell Cox is a Director on Gossamer's Board of Directors, and he signed the false and misleading Registration Statement.

27.     Defendant Thomas Daniel, M.D., is a Director on Gossamer's Board of Directors, and he signed the false and misleading Registration Statement.

28.     Defendant Renée Galá, is a Director on Gossamer's Board of Directors, and she signed the false and misleading Registration Statement.

29.     Defendant Otello Stampacchia, Ph.D., is a former Director on Gossamer's Board of Directors, and he signed the false and misleading Registration Statement.

30.     Defendants Hasnain, Bilenker, Burow, Cox, Daniel, Galá, and Stampacchia are named as Defendants for violations of the 1933 Act.

***Underwriter Defendants***

31.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") was an underwriter of Gossamer's IPO and assisted in the preparation and dissemination of Gossamer's IPO materials.

32.     Defendant SVB Leerink LLC ("Leerink") was an underwriter of Gossamer's IPO and assisted in the preparation and dissemination of Gossamer's IPO materials.

33.     Defendant Barclays Capital Inc. ("Barclays") was an underwriter of Gossamer's IPO and assisted in the preparation and dissemination of Gossamer's IPO materials.

34.     Defendant Evercore Group L.L.C. ("Evercore") was an underwriter of Gossamer's IPO and assisted in the preparation and dissemination of Gossamer's IPO materials.

35.     Defendants Merrill Lynch, Leerink, Barclays, and Evercore are sometimes referred to herein as the "Underwriter Defendants," and are named a Defendants for violations of §§ 11 and 12(a)(2) of the 1933 Act.

**Substantive Allegations**

36.     Gossamer is a clinical-stage biopharmaceutical company focused on discovering, acquiring, developing, and commercializing therapeutics in the disease areas of immunology, inflammation, and oncology.  The Company's lead drug, GB001, is an oral antagonist of prostaglandin D2 receptor 2, or DP2, in development for the treatment of moderate-to-severe eosinophilic asthma and other allergic conditions.  Gossamer's GB001 product is in Phase 2 development for asthma and rhinosinusitis.

**Defendants' Materially Untrue and Misleading**

**Statements and Omissions Regarding the IPO**

37.     On or about December 21, 2018, Gossamer filed with the SEC a Form S-1 Registration Statement, beginning the process toward what would be the Company's February 2019 IPO.

38.     The S-1 Registration Statement provided, in relevant part:

*GB001 (DP2 Antagonist)*

GB001 is an oral antagonist of prostaglandin D2 receptor 2, or DP2, in development for the treatment of moderate-to-severe eosinophilic asthma and other allergic conditions. Eosinophilic asthma is caused by high levels of white blood cells known as eosinophils and is associated with more severe symptoms, late-onset disease and resistance to steroid treatment. We estimate that approximately 50% of severe asthma patients in the United States have eosinophilic asthma. Despite the availability of new biologic therapies for these patients, asthma exacerbations remain a significant healthcare problem and unmet medical need. As of December 15, 2018, GB001 had been studied in 409 subjects in total and was generally well

tolerated. In a Phase 2 clinical trial conducted in Japan, GB001 showed a statistically significant improvement in time-to-first asthma exacerbation compared to placebo. ***In a separate 248 subject Phase 2 clinical trial, neither treatment group, GB001 nor montelukast, achieved the primary endpoint of improvement in forced expiratory volume in one second, or FEV1, as compared to placebo, which we believe was primarily related to study design and execution issues related to patient selection, including adherence to inhaled corticosteroid therapy, eosinophilic phenotype thresholds and disease severity.*** A single serious adverse event deemed by the investigator likely to be related to study drug was observed in a Japanese patient who had received a 160 mg dose of GB001 in a Phase 1 clinical trial conducted by Teijin Pharma Limited, or Teijin. The patient had GB001 levels approximately three to five times higher than the other patients receiving the 160 mg dose, and the dose was significantly higher than the highest dose of 60 mg currently being evaluated in our ongoing Phase 2b clinical trial. We commenced a Phase 2b clinical trial in moderate-to-severe eosinophilic asthma in October 2018.

Furthermore, we believe that there are a number of indications along the allergic spectrum for which GB001 may provide benefit. Accordingly, we plan to pursue the parallel development of GB001 in chronic rhinosinusitis with nasal polyps, or CRSwNP, and chronic spontaneous urticaria, or CSU. We expect to initiate proof-of-concept Phase 2 clinical trials for these indications in 2019. We retain worldwide rights to GB001, excluding Japan.

(Emphasis added.)

39. The S-1 Registration Statement further provided, in relevant part:

***DP2 antagonism has been clinically validated by Novartis' oral DP2 antagonist, fevipiprant, in a Phase 2 clinical trial.*** In this trial, both the 150 mg once-daily and 75 mg twice-daily doses demonstrated statistically significant improvements in FEV$_1$ compared to placebo in adult patients with asthma inadequately controlled with ICS. In addition, post hoc analyses of Phase 2 safety data related to asthma worsening, including exacerbations, appeared to demonstrate a reduction in the number of subjects experiencing an asthma event on fevipiprant compared to placebo. As of December 15, 2018, fevipiprant, at 150 mg once-daily and 450 mg once-daily doses, is being investigated by Novartis in six Phase 3 clinical trials in asthma patients.

(Emphasis added.)

40. The S-1 Registration Statement further provided, in relevant part:

*Clinical Development History of GB001*

We acquired GB001 through our acquisition of Pulmagen Therapeutics (Asthma) Limited, or Pulmagen, a wholly-owned subsidiary of our AA BioPharma Inc. subsidiary, in January 2018, after its partner, Teijin, completed a positive Phase 2, proof-of-concept clinical trial in Japanese patients. We have rights outside of Japan to all of the data from the two Phase 2 clinical trials conducted by Pulmagen and Teijin described below. As of December 15, 2018, 409 subjects have received at least one dose of GB001.

*Summary of Completed Pulmagen Phase 2 Clinical Trial*

In December 2014, Pulmagen completed a Phase 2 clinical trial of GB001, the primary objectives of which were (1) to evaluate the safety and efficacy of 20 mg GB001 once daily compared to placebo and an active comparator, montelukast, over a 10-week treatment period and (2) to evaluate the effect of the co-administration of 10 mg montelukast once daily with GB001 treatment in a two-week extension. The primary endpoint was improvement in FEV1 over 10 weeks. The study enrolled 248 patients with mild to moderate asthma that were uncontrolled on low- or medium-dose ICS, randomized 1:1:1 to placebo, 20 mg GB001 once daily and 10 mg montelukast once daily. Patients were put on a standard medium-dose of ICS in a four week lead-in to the study, during which they were also removed from their LABA, if applicable.

GB001 was generally well tolerated with a treatment emergent adverse event, or TEAE, rate similar to placebo, but the study did not meet its primary endpoint. Notably, neither the active comparator, montelukast, nor GB001, showed statistically significant differences in FEV1 improvement as compared to placebo. ***We believe the lack of statistically significant differences between the active treatment arms and placebo was primarily related to study design and execution issues related to patient selection, including adherence to ICS therapy, eosinophilic phenotype thresholds and disease severity.***

(Emphasis added.)

41.    The S-1 Registration Statement was signed by Defendants Gujrathi, Giraudo, Hasnain, Bilenker, Burow, Cox, Daniel, Galá, and Stampacchia.  This document also identified the Underwriter Defendants as the underwriters of the IPO.

42.     On or about January 23, 2019, Gossamer filed with the SEC a Form S-1/A Registration Statement, which would later be utilized for the IPO, and which incorporated a prospectus to be used in connection with the offer and sale of Gossamer shares.

43.     The January 23, 2019 Form S-1/A Registration Statement contained substantially similar representations regarding GB001 and Novartis' Phase 2 clinical trial as those in the Form S-1 Registration Statement set forth above.

44.     The January 23, 2019 Form S-1/A Registration Statement was signed by Defendants Gujrathi, Giraudo, Hasnain, Bilenker, Burow, Cox, Daniel, Galá, and Stampacchia. This document also identified the Underwriter Defendants as the underwriters of the IPO.

45.     On or about January 30, 2019, Gossamer filed with the SEC a Form S-1/A Registration Statement, which would later be utilized for the IPO, and which incorporated a prospectus to be used in connection with the offer and sale of Gossamer shares.

46.     The January 30, 2019 Form S-1/A Registration Statement contained substantially similar representations regarding GB001 and Novartis' Phase 2 clinical trial as those in the Form S-1 Registration Statement set forth above.

47.     The January 30, 2019 Form S-1/A Registration Statement was signed by Defendants Gujrathi, Giraudo, Hasnain, Bilenker, Burow, Cox, Daniel, Galá, and Stampacchia. This document also identified the Underwriter Defendants as the underwriters of the IPO.

48.     On or about February 8, 2019, Gossamer filed the final version of the public offering prospectus for the IPO with the SEC on Form 424(b)(4), which forms part of the Registration Statement that became effective on February 7, 2019 (collectively, the "Offering Documents").  The Prospectus solicited investors for an IPO of 17.25 million shares of Gossamer common stock at a price of $16.00 per share, for proceeds – after underwriting discounts and commissions, but before expenses – to the Company of approximately $256.68 million.

49.     The Prospectus contained substantially similar representations regarding GB001 and Novartis' Phase 2 clinical trial as those in the Form S-1 Registration Statement set forth above.

50.     The foregoing statements in ¶¶ 38-40, 43, 46, and 49 were materially untrue and/or misleading because they misrepresented and/or failed to disclose adverse facts, as alleged herein.

### Additional False and Misleading Statements

51.     On March 22, 2019, Gossamer filed its 2018 Annual Report on Form 10-K (the "2018 10-K") with the SEC.  The 2018 10-K contained substantially similar representations regarding GB001 and Novartis' Phase 2 clinical trial as those in the Form S-1 Registration Statement set forth above.

52.     The Management Defendants signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), which were appended to the 2018 10-K as exhibits.  These certifications attested that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

53.     The statements in ¶¶ 51-52, as well as those in the IPO materials, were materially false and misleading and omitted to disclose material information. Specifically, Defendants misrepresented and/or failed to disclose to investors: (1) the reasons for Gossamer's GB001 trial failures; (2) the purported clinical validation of Novartis' oral DP2 antagonist; and (3) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

54.     Defendants knew, or in reckless disregard for the truth should have known, that at the time the statements in ¶¶ 51-52, as well as those in the IPO materials, were made, they were false and/or misleading, and/or failed to disclose material information to investors.

### The Truth Begins to Emerge

55.     In October 2019, Novartis announced that its fevipiprant product had failed to improve long function in two Phase 3 trials, as measured by FEV1, over placebo.  This was after similar DP2 drugs developed by AstraZeneca and Amgen.  Analysts recognized that this failure "could have negative implications for Gossamer Bio, which has a DP2 antagonist in phase 2b. ***When Gossamer raised $276 million in an IPO earlier in the year, it said Novartis' fevipiprant***

***phase 2 had clinically validated DP2 antagonism. That statement now looks premature, particularly when viewed in light of the failures of other DP2 drugs.***"[2]

56.    On December 16, 2019, Novartis announced that it was terminating the development of its DP2 antagonist fevipiprant for asthma after it failed another pair of Phase 3 clinical trials. Analysts noted that, "[f]or Gossamer, detailed data from fevipiprant would likely weight heavily on GB001, its lead drug in the same class."[3]

57.    Another analyst commented that "Gossamer had pulled off a highly successful $276m Nasdaq flotation in February, and one reason investors stuck with the company in October is that it itself had indicated that the Zeal trials [by Novartis, who announced their failure in October 2019] would likely fail. ***Today that credibility suffered a major sentiment knock-back***, and Gossamer bulls and other DP2 inhibitor developers alike would do well to take note."[4]

58.    On this news, ***Gossamer's stock price plummeted by over 37% in one day***, from a December 13, 2019 close of $25.37 to a December 16, 2019 close of $15.96 per share.[5]

59.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Gossamer's securities, Plaintiff and other members of the Class have suffered significant losses and damages.

### Class Action Allegations

60.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Gossamer common stock between February 8, 2019 and December 13, 2019, inclusive, and/or who acquired Gossamer shares pursuant or traceable to Gossamer's Registration Statement and Prospectus in connection with its IPO, seeking to recover damages

---

[2] https://www.fiercebiotech.com/biotech/novartis-asthma-drug-fails-phase-3-raising-doubts-about-gossamer-s-prospects (emphasis added) (last visited on April 2, 2020).
[3] https://www.biopharmadive.com/news/novartis-fevipiprant-discontinue-asthma-gossamer/569149/ (last visited on April 2, 2020).
[4] https://www.evaluate.com/vantage/articles/news/trial-results/other-shoe-drops-gossamers-gb001 (last visited on April 2, 2020).
[5] This reflects one trading day, as the weekend fell over December 14-15, 2019.

caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act") and under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

61.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

62.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a.   Whether the 1933 Act and/or the Exchange Act were violated by Defendants;

      b.   Whether Defendants omitted and/or misrepresented material facts;

      c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

      d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

      e.   Whether the price of the Company's stock was artificially inflated; and

      f.   The extent of damage sustained by Class members and the appropriate measure of damages.

63.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

64.     Plaintiff will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

Class Action Complaint                                                                                          13

**Fraud on the Market**

66. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b. The omissions and misrepresentations were material;

    c. The Company's common stock traded in efficient markets;

    d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts.

67. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**No Safe Harbor**

68. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

69. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**Additional Scienter Allegations**

70.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Gossamer, their control over, and/or receipt and/or modification of Gossamer's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Gossamer, participated in the fraudulent scheme alleged herein.

**Loss Causation**

71.     On December 16, 2019, Novartis announced that it was terminating the development of its DP2 antagonist fevipiprant for asthma after it failed another pair of Phase 3 clinical trials.  On this news, the stock plummeted from a December 13, 2019 closing price of $25.37 per share to $15.96 per share, a one day drop of $9.41 or over 37%.

**Causes of Action**

**Count One**

**Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder (Against Gossamer and the Management Defendants)**

72.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose the material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

74.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

75.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count Two**

**Violations of § 20(a) of the Exchange Act**

**(Against the Management Defendants)**

76.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

77.     The Management Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Management Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Management Defendants were provided with or had unlimited access to the documents described above which contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**Count Three**

**Violations of § 11 of the 1933 Act**

**(Against All Defendants)**

78.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

79.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count. Plaintiff does not allege that any of the Defendants, other than Gossamer and the Management Defendants, had scienter or fraudulent intent with respect to this Court, insofar as scienter or fraudulent intent are not elements of a § 11 claim.

80.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and omitted to state material facts required to be stated therein.

81.     Gossamer is the registrant for the IPO.  The other Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

82.     As the issuer of the shares, Gossamer is strictly liable to Plaintiff and the Class for any misstatements or omissions in the Registration Statement.

83.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true, and/or without omissions of any material facts, were not misleading.

84.     By reason of the conduct alleged herein, each Defendant violated, and/or controlled a person who violated, § 11 of the 1933 Act.

85.     Plaintiff acquired Gossamer shares pursuant and/or traceable to the Registration Statement for the IPO.

86.     Plaintiff and the Class have sustained damages.  The value of Gossamer stock has declined substantially subsequent to and due to Defendants' violations.

87.     At the time of his purchase of Gossamer shares, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to within one year of bringing this lawsuit.  Moreover, fewer than three years elapsed between the time that the securities upon which this Count Three is brought were offered to the public and the time Plaintiff filed this Complaint.

## Count Four

## Violations of § 12(a)(2) of the 1933 Act

## (Against All Defendants)

88.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

89.     Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the IPO.  Defendants issued, caused to be issued, and signed the Registration Statement in connection with the IPO.  The Registration Statement was used to induce investors, such as Plaintiff and the other members of the Class, to purchase Gossamer's shares.

90.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and omitted material facts required to be stated therein.  Defendants' acts of solicitation included participating in the preparation of the materially untrue and incomplete Registration Statement.

91.     As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary to make the statements, in light of the circumstanced in which they were made, not misleading.

92.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

93.     Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated to make the statements contained therein not misleading.  None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

94.     This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after Gossamer's shares were sold to the Class in connection with the Offering.

### Count Five

### Violations of § 15 of the 1933 Act

### (Against All Defendants Except the Underwriter Defendants)

95.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

96.     This Count is brought pursuant to § 15 of the 1933 Act against Gossamer, Gujrathi, Giraudo, Hasnain, Bilenker, Burow, Cox, Daniel, Galá, and Stampacchia.

97.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count. Plaintiff does not allege that any of the Defendants, other than Gossamer and the Management Defendants, had scienter or fraudulent intent with respect to this Court, insofar as scienter or fraudulent intent are not elements of a § 15 claim.

98.     Gujrathi, Giraudo, Hasnain, Bilenker, Burow, Cox, Daniel, Galá, and Stampacchia each were control persons of Gossamer by virtue of their positions as director and/or senior officer of Gossamer.  These Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Gossamer.  Gossamer controlled these Defendants.

99.     Defendants each were culpable participants in the violations of § 11 of the 1933 Act alleged in Count Three above, based on their having signed and/or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the IPO to be successfully completed.

### Prayer for Relief

Plaintiff prays for relief and judgment as follows:

     a)   determining that this action is a proper class action pursuant to Rule 23(a) and
        23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined

herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of
the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as
Lead Counsel;

b) awarding compensatory and punitive damages in favor of Plaintiff and the other
class members against all Defendants, jointly and severally, for all damages
sustained as a result of Defendants' wrongdoing, in an amount to be proven at
trial, including pre-judgment and post- judgment interest thereon.

c) awarding Plaintiff and other members of the Class their costs and expenses in this
litigation, including reasonable attorneys' fees and experts' fees and other costs
and disbursements; and

d) awarding Plaintiff and the other Class members such other relief as this Court may
deem just and proper.

## Demand for Trial by Jury

Plaintiff demands a trial by jury in this action of all issues so triable.

April 3, 2020                                    Respectfully submitted,

                                                 /s/ Jacob A. Walker
                                                 Jacob A. Walker (SBN 271217)
                                                 Jeffrey C. Block (*pro hac vice* forthcoming)
                                                 Stephen J. Teti (*pro hac vice* forthcoming)
                                                 **Block & Leviton LLP**
                                                 260 Franklin Street, Suite 1860
                                                 Boston, MA 02110
                                                 (617) 398-5600 phone
                                                 (617) 507-6020 fax

                                                 *Attorneys for Plaintiff*