1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| SCOTT KUHNE, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>v.<br><br>GOSSAMER BIO, INC.; SHEILA GUJRATHI, M.D.; BRYAN GIRAUDO; FAHEEM HASNAIN; JOSHUA H. BILENKER, M.D.; KRISTINA BUROW; RUSSELL COX; THOMAS DANIEL, M.D.; RENEE GALA; OTELLO STAMPACCHIA, Ph.D.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED; SVB LEERINK LLC; BARCLAYS CAPITAL, INC.; and EVERCORE GROUP L.L.C.,<br><br>                       Defendants. | Case No.: 20-cv-649-DMS-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

24
25
26
27
28

      Pending before the Court is a motion to dismiss Plaintiff Scott Kuhne's Second Amended Complaint, filed by Defendants Gossamer Bio, Inc., Sheila Gujrathi, Bryan Giraudo, Faheem Hasnain, Joshua H. Bilenker, Kristina Burow, Russell Cox, Thomas Daniel, Renee Gala, and Otello Stampacchia. Defendants Barclays Capital Inc., Evercore

1

Group L.L.C., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and SVB Leerink LLC join the motion.  Plaintiff filed a response in opposition, and Defendants filed a reply.  For the following reasons, the motion is granted in part and denied in part.

**I.**

**BACKGROUND**

This federal securities action arises out of Plaintiff's purchase of Defendant Gossamer Bio, Inc. ("Gossamer") stock.   Plaintiff alleges Gossamer's Registration Statement and other documents filed with the Securities and Exchange Commission ("SEC") in support of Gossamer's initial public offering ("IPO") contained untrue statements and omissions of material fact.

Gossamer is a biotechnology company headquartered in this District, focused on "discovering, acquiring, developing, and commercializing therapeutics in the disease areas of immunology, inflammation, and oncology."  (Second Amended Complaint ("SAC"), ECF No. 30, ¶¶ 26, 50.)  Defendants Sheila Gujrathi and Bryan Giraudo are officers of Gossamer, and Defendants Faheem Hasnain, Joshua H. Bilenker, Kristina Burow, Russell Cox, Thomas Daniel, Renee Gala, and Otello Stampacchia are current or former members of Gossamer's Board of Directors (collectively, the "Individual Defendants").  (*Id.* ¶¶ 27–37.)  Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated, and SVB Leerink LLC (the "Underwriter Defendants") are primarily investment banking houses who were underwriters of Gossamer's IPO and assisted in the preparation and dissemination of Gossamer's IPO materials.  (*Id.* ¶¶ 38–49.)

Gossamer's most advanced drug candidate, GB001, is in development for the treatment of moderate-to-severe eosinophilic asthma and other allergic conditions.  (*Id.* ¶ 50.)  GB001 "is an oral antagonist of prostaglandin D2 receptor 2, or DP2," which is involved in the inflammatory processes that contribute to asthma.  (*Id.*; Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss, ECF No. 30, at 5.)  Drug development typically involves three phases of clinical human trials.  (Defs.' Mem. of P. & A. 1 (citing Ex. 1 to Decl. of Colleen C. Smith, ECF No. 32-4, at 83–85).)  In Phase 1, the product is introduced into

human volunteers; in Phase 2, clinical trials are conducted in a limited patient population; Phase 3 typically studies the drug for safety and efficacy in an expanded patient population. (*Id.*)   Gossamer commenced a Phase 2 clinical trial (the "LEDA trial" or the "LEDA study") for GB001 in October 2018. (SAC ¶ 52.)

In December 2018, Gossamer filed a Form S-1 Registration Statement with the SEC in preparation for its IPO.  (*Id.* ¶ 55.)  Gossamer subsequently filed two Amendments to the Registration Statement on January 23, 2019, and January 30, 2019, respectively, and filed a final Prospectus on February 8, 2019 (collectively, the "IPO materials").  (*Id.* ¶¶ 60–70.)  The IPO materials described the status of GB001's testing and development.  As relevant to Plaintiff's claims, they stated that (1) DP2 antagonism had been validated in an earlier study performed by a different company, Novartis; (2) the results of the interim analysis of the Phase 2 LEDA trial would be available in the first half of 2020; and (3) if those results supported further development, Gossamer would initiate a Phase 3 trial of GB001.  (*Id.* ¶¶ 57, 61, 64, 68–70.)  Plaintiff alleges these statements contained untrue statements of material fact, omitted material information, and implied an increased likelihood of success for GB001, thereby misleading investors.  (*Id.* ¶ 71.)

In February 2019, Gossamer completed the IPO of its stock.  (*Id.* ¶ 66.)  Pursuant to the IPO, Plaintiff acquired shares of Gossamer common stock.  (*Id.* ¶ 25.)  Shares of Gossamer common stock were sold at $16.00 per share in the IPO.  (*Id.* ¶ 98.)  On April 3, 2020, the date Plaintiff filed the initial complaint in this action, Gossamer's stock price closed at $10.19 per share.  (*Id.* ¶ 99.)  Plaintiff alleges a "precipitious decline" in the market value of Gossamer's securities and "significant losses and damages" as a result of misstatements and omissions in Gossamer's IPO materials.  (*Id.* ¶ 97.)

Based on the foregoing allegations, Plaintiff filed the instant action in this Court on April 3, 2020, and filed a First Amended Complaint on August 31, 2020. (ECF Nos. 1, 27.) The Court granted Plaintiff leave to file a Second Amended Complaint, which Plaintiff filed on November 20, 2020.  (ECF No. 30.)  Plaintiff brings this action on behalf of a putative class consisting of all individuals and entities who acquired Gossamer stock in

connection with the IPO.  (SAC ¶ 100.)  Plaintiff's SAC alleges a claim for violation of § 11 of the Securities Act against all defendants, and a claim for violation of § 15 of the Securities Act against Gossamer and the Individual Defendants.  (*Id.* ¶¶ 110–118, 119–122.)  Gossamer and the Individual Defendants now move to dismiss the SAC in its entirety.  (ECF No. 32.)  The Underwriter Defendants join the motion.  (ECF Nos. 33, 37.)

## II.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  A court, however, need not accept all conclusory allegations as true.  Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff."  *Holden v. Hagopian*, 978 F.3d 1115, 1121 (9th Cir. 1992) (citation omitted).  A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.

## DISCUSSION

In the SAC, Plaintiff alleges Gossamer's IPO materials "misled investors with respect to (1) the purported clinical validation of Novartis' oral DP2 antagonist; and (2) Gossamer's purported plan to release the results of its interim analysis of the Phase 2b LEDA study and to launch the first of two Phase 3 trials for GB001 upon such analysis."  (SAC ¶ 54.)  Defendants move to dismiss for failure to state a claim, contending

(1) Gossamer's statements regarding the Novartis trial were not untrue or materially misleading and (2) Gossamer's statements regarding its Phase 2 LEDA trial were true and are protected by the "bespeaks caution" doctrine.  Defendants further argue Plaintiff fails to plead a § 11 claim based on an omission of material fact, and Plaintiff fails to plead facts establishing losses.

Section 11 of the 1933 Securities Act creates a private remedy for any purchaser of a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).   Section 15 makes a "control person"—here, allegedly the Individual Defendants—liable for causing violations of § 11.  15 U.S.C. § 77o(a).

"Section 11 'places a relatively minimal burden on a plaintiff.' "  *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).  "The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403–04 (9th Cir. 1996)).  If the plaintiff purchased a security issued pursuant to a registration statement and can show such a material misstatement or omission, he has established a *prima facie* § 11 case.   *Hildes*, 734 F.3d at 859.   Section 11 does not have a scienter requirement; "defendants will be liable for innocent or negligent material misstatements or omissions."  *In re Daou Sys., Inc.*, 411 F.3d at 1027. (citation omitted).

 "[W]hether a statement is 'misleading' depends on the perspective of a reasonable investor."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).  "[O]nly if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1405 (citing *Fecht v.*

*Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)); *see Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) (in context of claim under § 10(b) of Securities Act, dismissal under Rule 12(b)(6) is only warranted "if reasonable minds could not disagree that the challenged statements were not misleading.") (internal citation and quotation marks omitted).

Plaintiff's single § 11 claim is based on multiple distinct allegedly misleading statements in Gossamer's IPO materials—(1) statements regarding the Novartis study, (2) statements regarding interim results from Gossamer's Phase 2 LEDA trial, and (3) statements regarding Gossamer's proposed Phase 3 trial. The Court addresses each set of statements in turn.

**A. Gossamer's Statements Regarding the Novartis Study**

First, Plaintiff claims Gossamer's description of the Novartis study in its IPO materials was materially misleading. Defendants contend Plaintiff fails to state a claim because Gossamer's statements about the Novartis study were accurate and Gossamer was merely conveying information that Novartis itself had reported.

In its IPO materials describing its development of GB001, Gossamer stated: "DP2 antagonism has been clinically validated by Novartis' oral DP2 antagonist, fevipiprant, in a Phase 2 clinical trial." (SAC ¶¶ 57, 68.) Plaintiff claims the use of "clinically validated" is misleading and materially different from Novartis' own description of its findings.

Plaintiff's argument is unpersuasive. In describing its own findings, Novartis did not use the specific term "validated," but it stated that the study in question "achieved its primary endpoint in demonstrating a clinically and statistically significant effect" when compared to a placebo. (Ex. 7 to Decl. of Colleen C. Smith, ECF No. 32-10, at 408.)[1] In

---

[1] Plaintiff does not object to Gossamer's request that the Court judicially notice this exhibit. A district court may judicially notice an adjudicative fact pursuant to Rule 201 if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). Facts "not subject to reasonable dispute" are those that are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). The Court takes judicial notice of the fact that Novartis used the language in question to describe the results of its study.

its IPO materials, Gossamer described these results as having "clinically validated" DP2 antagonism and explained that in the Novartis trial, fevipiprant "demonstrated statistically significant improvements . . . compared to placebo." (SAC ¶ 57.)   Gossamer was not required to use the exact wording used by Novartis.  *See, e.g.*, *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1163 (9th Cir. 2009) (finding plaintiff failed to state a section 11 claim where "allegation merely squabble[d] about the adverbs used in the registration statement, and fail[ed] to indicate that the language used was false.").  Additionally, a 2017 article in the *European Respiratory Journal* reported, in line with Gossamer's characterization in its IPO materials, that the Novartis study "confirm[ed] the efficacy of the oral DP2 receptor antagonist, fevipiprant."  (Ex. 8 Decl. of Colleen C. Smith, ECF No. 32-11, at 10.)[2] Plaintiff points to post-IPO statements made by analysts in October 2019 after Novartis' drug eventually failed Phase 3 trials, specifically that Gossamer's statement about clinical validation "*now* looks premature" (SAC ¶ 84 (emphasis added)), but there is no indication that Gossamer's statement about the Novartis trial results was inaccurate at the time of its IPO in February 2019.

Plaintiff's claim that Gossamer's statement contained an omission is similarly unavailing.  Although Plaintiff argues generally that Gossamer's IPO materials omitted material information about the Novartis study, Plaintiff does not articulate what that information is, let alone that it existed at the time the IPO materials were filed. *See Rubke*, 551 F.3d at 1164 ("A claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective.").  The language used in Gossamer's IPO materials reasonably conveyed the results of Novartis' Phase 2 fevipiprant trial as it had been reported at the time of the IPO.  *See Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) ("[T]he disclosure required by the securities laws is measured not by literal truth, but by the ability of the

---

[2] As Plaintiff does not object, the Court judicially notices the fact that the article used this language.

material to accurately inform rather than mislead prospective buyers.") (internal quotation marks and citation omitted).

Moreeover, even if the Court were to find Gossamer misrepresented the results of the Novartis trial, the Court agrees with Defendants that the alleged misrepresentation was not material because an "issuer's public statements cannot be analyzed in complete isolation." *Miller*, 519 F.3d at 886. Gossamer advised in its IPO materials that "[c]linical drug development involves a lengthy and expensive process with an uncertain outcome, and the results of preclinical studies and early clinical trials are not necessarily predictive of future results." (Ex. 1 to Decl. of Colleen C. Smith ("Amended Registration Statement"), ECF No. 32-4, at 8, 15.)[3] It further stated that the outcome of clinical drug development is "inherently uncertain" and "[d]espite promising preclinical or clinical results, any product candidate can unexpectedly fail at any stage of preclinical or clinical development." (*Id.* 15.) This undercuts Plaintiff's claim that Gossamer "implied an increased likelihood of success for Gossamer's GB001 candidate." (Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss 9 (citing SAC ¶ 71).) In context, a reasonable investor would not be misled by Gossamer's statements to believe that Gossamer was guaranteeing a particular outcome for its own GB001 product or for Novartis' Phase 3 trials. *See In re Daou Sys., Inc.*, 411 F.3d at 1027 (to establish § 11 claim, plaintiff must show the misrepresentation "would have misled a reasonable investor about the nature of his or her investment").

Accordingly, Plaintiff has not alleged a plausible claim insofar as he alleges Gossamer's description of Novartis' Phase 2 trial results contained a material misrepresentation or omission.

---

[3] This document—Amendment No. 2 to Form S-1 Registration Statement, filed with the SEC on January 30, 2019—is part of Gossamer's IPO materials and is incorporated by reference into the SAC. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (stating document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

**B. Gossamer's Statements Regarding GB001 Clinical Trials**

Second, Plaintiff claims Gossamer made material misrepresentations or omissions with respect to the interim analysis of the Phase 2 LEDA trial and Gossamer's plan to launch a Phase 3 trial for GB001.  Plaintiff argues Gossamer stated in the IPO materials that it "expect[ed] the results of this interim analysis to be available in the first half of 2020," and that if those results were positive, it "plan[ned] on initiating [a] Phase 3 clinical trial thereafter" (SAC ¶ 70), but that subsequently, Gossamer did not release the results of the interim analysis to the public or initiate a Phase 3 clinical trial, contrary to those statements.  Defendants contend these statements were true and that Gossamer is shielded from liability under the bespeaks caution doctrine because its forward-looking statements regarding future expectations are not actionable.

1. Interim Analysis Results of the Phase 2 LEDA Trial

First, Plaintiff contends the language of the IPO materials was misleading because Gossamer did not "release" the results from the interim analysis of the Phase 2 LEDA trial. As relevant, Gossamer's Prospectus stated:

> We commenced a Phase 2b clinical trial of GB001 in moderate-to severe eosinophilic asthma in October 2018, and we expect to conduct an interim analysis of the results of this trial in the first half of 2020.
>
> . . .
>
> We plan to conduct an interim analysis after approximately 320 patients complete the 24-week treatment period, and *we expect the results of this interim analysis to be available in the first half of 2020.* If the results obtained in the interim analysis support further development, we plan on initiating our first Phase 3 clinical trial thereafter.

(Ex. 2 to Decl. of Colleen C. Smith ("Prospectus"), ECF No. 32-5, at 71 (emphasis added).)[4]  On May 12, 2020, Gossamer issued a press release stating it had completed the

---

[4] This document, the Prospectus, is part of Gossamer's IPO materials and therefore incorporated by reference into the SAC.

interim analysis of the Phase 2 LEDA trial, and that "[b]ased on the results of the interim analysis," it was commencing "initial Phase 3 planning," but it did not share specifics of the interim results.  (SAC ¶ 95.)

Defendants argue Plaintiff cannot state a claim because Gossamer never stated it would "release" data in its IPO materials, only that it "expect[ed] the results of this interim analysis *to be available* in the first half of 2020," without specifying to whom those results would be available.  (Prospectus 71 (emphasis added).)

Plaintiff contends that "Plaintiff and analysts understood this statement from the Offering Materials to mean that Gossamer would be making those results 'available' to the public."  (Pl.'s Mem. of P. & A. 13.)  Plaintiff points to a November 2019 earnings call, during which an analyst asked "Can you tell us what data should we expect to be released at the interim analysis [of the LEDA trial]?"  (SAC ¶ 88.)  Defendant Gujrathi responded "we will not be releasing any of this data since this will be an ongoing study, but we will be indicating whether we think the data's in support of moving forward into Phase III." (*Id.*)  Plaintiff argues the analyst's question supports the understanding that Gossamer would be releasing the results of the interim analysis to the public, and that at the very least, the phrase is ambiguous and thus it would be inappropriate to dismiss these allegations at this stage of litigation.  The Court agrees that Gossamer's statement that it expected the results "to be available" could give rise to the reasonable inference that Gossamer would make that data "available" to the public or to investors.

Gossamer nevertheless contends this statement is protected by the bespeaks caution doctrine and is therefore not misleading.  The bespeaks caution doctrine "provides a mechanism by which a court can rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud."[5] *In re Atossa Genetics Inc Sec. Litig.*, 868

---

[5] The bespeaks caution doctrine is "now codified in the Private Securities Litigation Reform Act ("PSLRA") as Safe Harbor." *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1291 (E.D. Wash. 2007).  "Section 11 liability may not be premised on any forward-

F.3d 784, 798 (9th Cir. 2017) (citation omitted). But "[d]ismissal on the pleadings under the bespeaks caution doctrine . . . requires a stringent showing: There must be sufficient cautionary language or risk disclosure such that reasonable minds could not disagree that the challenged statements were not misleading." *Id.* (citation omitted).

Plaintiff argues Gossamer's cautionary language is too general and imprecise to warrant protection, because "the language bespeaking caution must relate directly to that to which plaintiffs claim to have been misled." *Id.* (citation and brackets omitted). Indeed, although Gossamer warned generally of uncertainty and risk in the drug development process, Defendants do not point to any language in Gossamer's IPO materials cautioning investors that it might not disclose the data from the interim analysis. Materiality requires "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him," and should only be resolved as a matter of law if reasonable minds cannot differ. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). The Court finds reasonable minds could differ on whether Gossamer's statement about the availability of the results was material, and is therefore unable to find as a matter of law that there was sufficient cautionary language to render the statement not misleading.

2. Initiation of Phase 3 Trial

Next, Plaintiff alleges Gossamer made material misrepresentations about its potential plans to begin a Phase 3 trial for GB001. In its IPO materials, Gossamer stated:

> If the results obtained in the interim analysis support further development, we plan on initiating our first Phase 3 clinical trial thereafter. We expect to report full data from the Phase 2b clinical trial in the second half of 2020. If the full data support further development, we will initiate a second Phase 3 clinical trial.

---

looking statement that is 'accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.' " *Id.* (citing 15 U.S.C. § 77z–2 (c)(1)(A)(i)).

(Prospectus 71.)  It further explained: "We have designed [the Phase 2 LEDA trial] to efficiently assess proof-of-principle and help enable rapid transition to Phase 3 clinical trials."  (*Id.*)

Ultimately, on May 12, 2020, Gossamer announced that "[b]ased on the results of the interim analysis," it was commencing "initial Phase 3 planning," but that it was not going to immediately begin a Phase 3 trial for GB001.  Rather, the "final decision to proceed to Phase 3" would be made "based on the totality of the final data" from the LEDA trial.  (SAC ¶ 95.)  On October 13, 2020, Gossamer announced the Phase 2 LEDA trial had failed to meet its primary endpoints.  (*Id.* ¶ 96.)

Plaintiff contends a reasonable investor could infer from Gossamer's IPO statements "that Gossamer was so confident in its GB001 product" that it would be "ready to launch its Phase 3 study even before seeing the full results of the Phase 2b trial."  (Pl.'s Mem. of P. & A. 15.)  Gossamer did indicate it could potentially begin a Phase 3 study before receiving the full results of the Phase 2 LEDA trial.  However, the Court cannot find these statements were materially misleading.  The plain language of the IPO materials indicates Gossamer hoped to initiate a Phase 3 trial following results from the interim analysis, but it did not guarantee it would do so, nor did it state when such a Phase 3 trial would begin.  Rather, it stated it would initiate a Phase 3 trial *if* the data from Phase 2 supported further development.

Further, the bespeaks caution doctrine applies here because in addition to the conditional language regarding its plans, Gossamer's IPO materials included ample cautionary statements about its clinical trials.  Gossamer specifically advised "[w]e cannot guarantee that any clinical trials will be conducted as planned or completed on schedule, if at all" and "[w]e do not know whether our planned trials will begin on time or be completed on schedule, if at all." (Amended Registration Statement 15.)  It further explained that the "commencement and completion of clinical trials can be delayed for a number of reasons," listing and describing examples, and that such delays in clinical trials could adversely affect its commercial prospects.  (*Id.* 16.)  The Court finds this disclaimer was adequate with

respect to potential delay or completion of a Phase 3 trial, and that reasonable minds could not differ on its adequacy, especially given that Gossamer did not guarantee that it would start a Phase 3 trial.

In sum, with respect to Count One, the Court finds as a matter of law that Gossamer's statements and disclosures in its IPO materials regarding the Novartis study and its plans to potentially conduct a Phase 3 trial were adequate and not misleading. However, reasonable minds could disagree on whether Gossamer's statements about the availability of the interim analysis results of the Phase 2 LEDA trial were material misrepresentations. Accordingly, to the extent Plaintiff's § 11 claim relies on those statements, Plaintiff has sufficiently stated a claim.

**C. Negative Causation Defense**

Defendants next raise the affirmative defense of "negative causation," asserting that the alleged misrepresentation did not cause Plaintiff's damages. *In re New Century*, 588 F. Supp. 2d 1206, 1236 (C.D. Cal. 2008) (citing 15 U.S.C. § 77k(e)). In raising this defense, Defendants bear the "heavy burden" of proving "the depreciation in value of a plaintiff's stock resulted from factors other than the alleged material misstatement." *Hildes*, 734 F.3d at 860 (internal citation and quotation marks omitted). Moreover, "[b]ecause an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial." *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1131 (S.D. Cal. 2012) (quoting *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1171 (C.D. Cal. 2008) (internal quotation marks omitted).

Defendants argue Plaintiff cannot premise his claim on losses purportedly suffered after the initial complaint was filed on April 3, 2020, such as those allegedly stemming from Gossamer's October 13, 2020 announcement about the Phase 2 LEDA trial results. However, as Plaintiff contends, by April 3, 2020, Gossamer had already stated it was not going to publicly release the data from the interim analysis of the Phase 2 LEDA trial, as

discussed above.[6]  The Court finds Defendants have not met their burden of establishing negative causation, and in any event, the issue is more appropriate for resolution at a later stage.

**D. Plaintiff's § 15 Claim**

In order to state a claim for a violation of § 15 on Count Two, Plaintiff must allege "(1) a primary violation of the securities laws; and (2) that the defendant exercised 'control' over the primary violator." *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 508–09 (W.D. Wash. 2009) (citing *Howard v. Everex Sys.,* 228 F.3d 1057, 1065 (9th Cir. 2000)).

Plaintiff has alleged a plausible § 11 claim based on Gossamer's statements regarding the release of the interim analysis results, as discussed above, and thus has pled a primary violation of the securities laws.  The SAC further alleges the Individual Defendants had control over Gossamer, including allegations about their specific positions within the company or on its board of directors.  (SAC ¶¶ 27–37; 119–122.)  Accordingly, Defendants' motion to dismiss is denied with respect to Count Two.

**E. Leave to Amend**

Generally, when a court dismisses for failure to state a claim under Rule 12(b)(6), leave to amend is granted "even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citation omitted).  Here, the Court finds the deficiencies in Plaintiff's claim cannot be cured by the allegation of other facts.  As discussed above, even if Gossamer's description of the Novartis study contained a misrepresentation or omission, it was not misleading in context,

---

[6] Given its determination that Plaintiff has failed to state a plausible claim based on Gossamer's other statements, the Court addresses Defendants' negative causation argument only with respect to Gossamer's alleged misrepresentation of the availability of the Phase 2 LEDA interim analysis results.

and Gossamer sufficiently bespoke caution about its plans for a Phase 3 trial.  Accordingly, the Court declines to grant Plaintiff leave to amend.

## IV.

## CONCLUSION AND ORDER

For the reasons set out above, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  It is hereby ordered as follows:

1. To the extent Plaintiff's § 11 claim alleges Gossamer "misled investors as to the clinical validation of DP2 antagonism by Novartis' fevipiprant product" and "would immediately launch a Phase 3 trial for GB001" should the interim analysis be successful (SAC ¶ 71), the motion to dismiss is granted.

2. To the extent Plaintiff's § 11 claim alleges Gossamer "misrepresented that Gossamer intended to . . . release the result of its . . . interim analysis of the Phase 2b LEDA study" (*id.*), the motion is denied.

3. The motion is denied as to Plaintiff's § 15 claim.

**IT IS SO ORDERED**.

Dated:  April 18, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court