Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jake@blockleviton.com

*Attorneys for Lead Plaintiff*
*and the Proposed Class*

[*Additional Counsel Listed on Signature Page*]

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT KUHNE, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>GOSSAMER BIO, INC., SHEILA GUJRATHI, M.D., BRYAN GIRAUDO, FAHEEM HASNAIN, JOSHUA H. BILENKER, M.D., KRISTINA BUROW, RUSSELL COX, THOMAS DANIEL, M.D., RENEE GALA, OTELLO STAMPACCHIA, Ph.D., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, SVB LEERINK LLC, BARCLAYS CAPITAL INC., and EVERCORE GROUP L.L.C.,<br><br>      Defendants. | Case No.: 3:20-cv-00649-DMS-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES ONLY**<br><br>Date:          June 24, 2022<br>Time:         1:30 pm<br>Judge:       Hon. Dana M. Sabraw<br>Dept.:         13A |

# TABLE OF CONTENTS

I.  Preliminary Statement ................................................................................. 1

II.  The Settlement Warrants Final Approval ........................................................ 4

   A.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Class... 6

   B.  The Settlement is the Product of Arm's-Length Negotiations Between
Experienced Counsel ...................................................................................... 9

   C.  The Settlement Provides Adequate Relief to the Class ............................... 11

      1.  The Risks of Continued Litigation............................................................ 11

      2.  The Complexity, Expense and Duration of Continued Litigation ............ 15

      3.  The Amount Offered in Settlement ......................................................... 16

      4.  The Reaction of Class Members ............................................................. 18

      5.  The Remaining Rule 23(e)(2)(C) Factors Support Final Approval .......... 18

   D.  The Proposed Form and Method of Notice to the Class is Appropriate ...... 20

III.  The Notice Program Satisfies Rule 23 and Due Process ............................. 21

IV.  The Plan of Allocation is Fair and Reasonable .......................................... 23

V.  The Court Should Finally Certify the Class
for Settlement Purposes Only..................................................................... 24

VI.  The Parties Have Amended the Settlement Stipulation
to Address an Error ................................................................................... 25

VII.  Conclusion.................................................................................................. 25

**Cases**

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ............................................................................... 5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 556 (9th Cir. 2004) ...................................................................... 6, 11, 15

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................... 4, 6

*Destefano v. Zynga Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................ 16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................... 14

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ............................................................................... 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................... 6

*Harris v. Best Buy Stores, L.P.*,
2018 WL 3932178 (N.D. Cal. Aug. 16, 2018) ...................................................... 12

*Harris v. Vector Mktg. Corp.*,
2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................................... 24

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ....................................................... 19

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 ............................................................................................... 22

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................................... 10

*Hildes v. Arthur Anderson LLP*,
734 F.3d 854 (9th Cir. 2013) .................................................................................. 13

*Hsu v. Puma Biotech., Inc.*,
No. 8:15-cv-00865-AG-ASK (C.D. Cal.).................................................................. 15

*Hudson v. Libre Tech. Inc.*,
2020 WL 2467060 (S.D. Cal. May 12, 2020) ....................................................... 5, 6

*In re Amgen Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........................................................ 16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................. 16

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................ 15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................... 15

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .......................................................... 8

*In re Broadcom Corp., Sec. Litig.*,
2005 WL 8153007 (C.D. Cal. Sept. 12, 2005) ........................................................ 17

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ........................................................ 20

*In re Chicken Antitrust Litig.*,
669 F.2d 228 (5th Cir. 1982) ................................................................................... 8

*In re Google LLC St. View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................................................ 18

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................ 15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................................ 11, 16

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ...................................................................................... 7

*In re NCAA Ath. Grant-in-Aid Cap Antirust Litig.*,
768 F. App'x 651 (9th Cir. 2019) .............................................................................. 19

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 13

*In re Oracle Sec. Litig.*,
1994 WL 502054 (N.D. Cal. June 18, 1994) ............................................................. 23

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................. 7

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................................... 23

*In re Snap Inc. Sec. Litig.*,
2018 WL 361674 (C.D. Cal. Aug. 8, 2018) ............................................................... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ...................................................................................... 4

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................................ 14

*In re Wireless Facilities, Inc. Sec. Litig. II*,
2008 WL 11338455 (S.D. Cal. Dec. 19, 2008) ......................................................... 23

*Int'l Bhd. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................................... 17

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ...................................................................................... 6

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ............................................................................ 8

*Martin v. AmeriPride Servs, Inc.*,
2011 WL 2313604 (S.D. Cal. June 9, 2011) ....................................................... 9

*Nat'l Rural Telcoms Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 9

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................... 14, 23, 24

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .............................................................................. 5

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ......................................................... 15

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ......................................................................... 15

*Roberti v. OSI Sys, Inc.*,
2015 WL 832996 (C.D. Cal. Dec. 8, 2015) ......................................................... 9

*Rodriguez v. West Pub. Corp.*,
563 F.3d 948 (9th Cir. 2009) .............................................................................. 9

*Stanton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................................. 24

*Torrisi v. Tuscan Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ................................................................................ 6

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ..................................................... 17

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
2018 WL 828199 (S.D. Cal. Feb. 9, 2018) ............................................. 4, 11, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................................. 16

*Young v. LG Chem, Ltd.*,
783 F. App'x 727 (9th Cir. 2019) ....................................................................... 22

*Zimmer Paper Prods, Inc. v. Berger Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985) ................................................................................. 22

**Statutes**

15 U.S.C. § 77z-1(a)(4) ....................................................................................... 24

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) ................................... 17

**Rules**

Fed. R. Civ. P. 23(e)(2) .............................................................................. passim

Lead Plaintiff Scott Kuhne ("Lead Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of his motion seeking an Order: (i) granting final approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Settlement dated February 1, 2022 ("Stipulation") and Amendment to Stipulation and Agreement of Settlement, dated May 19, 2022 (the "Amendment")[1]; (ii) approving the proposed Plan of Allocation for the net proceeds of the Settlement; and (iii) finally certifying the Class for settlement purposes only.[2]

## I.     PRELIMINARY STATEMENT

The factual background and claims, as well as the procedural history of this Action, are set forth in Lead Plaintiff's Motion for Preliminary Approval and memorandum of points and authorities in support thereof, filed on February 2, 2022, ECF Nos. 66; 66-1, and are incorporated herein. In short, Lead Plaintiff alleges that the Registration Statement filed in connection with Gossamer's February 8, 2019 IPO contained materially false and misleading statements concerning Gossamer's drug candidate, GB001.

Under the Settlement, Defendants have agreed to pay $2,375,000 in cash to settle the claims in the Action and related claims that could have been brought ("Released Claims"). The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court. ECF No. 66-2.

As discussed herein, Lead Plaintiff's damages expert estimated the maximum recoverable damages, under the best-case-scenario, if Lead Plaintiff prevailed on all

---

[1] Attached as Exhibit 1 to the Declaration of Jacob A. Walker in Support of: (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation and Certification of the Class for Settlement Purposes Only; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Walker Declaration" or "Walker Decl.").

[2] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation. ECF No. 66-2.

issues through trial and appeal, and using a set of entirely Plaintiff-friendly assumptions, was at most between $53.6 million and $73.2 million. The $2.375 million Settlement thus represents a recovery between 3.2% and 4.2% of best-case-scenario, maximum recoverable damages and, when considering all the attendant risks of continued litigation in this Action, represents an excellent result for the Class.

As described below and in the accompanying Walker Declaration, the decision to settle was well-informed by hard-fought litigation that involved a comprehensive investigation; preparation of a detailed Amended Complaint; briefing related to Defendants' motion to dismiss; preparation of Lead Plaintiff's motion for class certification; serving and responding to discovery requests; analysis of damages issues; and a hard-fought settlement process with experienced defense counsel that also involved an ENE Conference facilitated by the Hon. Daniel E. Butcher. *See generally* Walker Decl. ¶ 4.

Lead Plaintiff believes that the claims asserted in the Action have merit. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendants through trial, particularly given that the Court dismissed all but one of Lead Plaintiff's claims in deciding Defendants' motion to dismiss. Lead Plaintiff and Lead Counsel also have considered the uncertain outcome and risks in connection with Defendants' anticipated opposition to the motion for class certification (ECF No. 58), Defendants' anticipated motions for summary judgment, and persuading a jury at trial, especially in complex matters such as this Litigation, as well as the risks posed by post-trial motions, and potential appeals from the determination of those motions, or a jury verdict. Lead Plaintiff and Lead Counsel also are aware of the risks presented by the defenses of the securities law violations asserted in the Action. Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Class given the

circumstances presented here. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiff and the Class, and is fair, reasonable, and adequate, especially when viewed in the light of the substantial challenges the Class would face in establishing Defendants' liability and in demonstrating that the Class suffered damages.

Members of the Class also support the Settlement. On March 14, 2022, the Court entered an Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice to the Class (the "Preliminary Approval Order"). ECF No. 69. Pursuant to and in compliance with the Preliminary Approval Order, and based on records maintained by Defendants, beginning on April 8, 2022, the Court-appointed Claims Administrator Angeion Group ("Angeion" or the "Claims Administrator"), caused the Notice and Claim Form (together the "Notice Packet") to be mailed to potential Class Members. *See* Declaration of Brittany M. Cudworth of Angeion Group, Regarding: (A) Mailing of Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received, ("Cudworth Decl.") ¶¶ 4-8 (attached to the Walker Decl. as Exhibit 2). A total of 27,340 Notice Packets have been mailed as of May 19, 2022. *Id*. ¶ 8. On or before April 8, 2022, the Notice and Claim Form were also posted to www.GossamerSecuritiesLitigation.com (the "Settlement Website"). *Id* ¶ 10. On April 18, 2022 and April 20, 2022, the Summary Notice was published in *Investor's Business Daily* and in *The Wall Street Journal*, respectively. Cudworth Decl. ¶ 9. To date, not a single Class Member has opted out of the Settlement. Walker Decl. ¶ 44; Cudworth Decl. ¶ 14. Although the objection deadline is June 3, 2022, to date, no Class Member has filed an objection to any aspect of the Settlement or the Plan of

Allocation. Walker Decl. ¶ 44; Cudworth Decl. ¶ 15.[3] This is strong evidence that the Settlement is fair, reasonable, and adequate. *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *6 (S.D. Cal. Feb. 9, 2018) ("The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement.").

For the reasons set forth herein, and in the accompanying Walker Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, approve the Plan of Allocation as set forth in the Notice and described herein, and finally certify the Class for settlement purposes only.

## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Whether to grant such approval lies within the sound discretion of the district court. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("Deciding whether a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and rough justice,' best left to the district judge, who has . . . a firsthand grasp of the claims, the class, the evidence, and the course of proceedings."). Further, the decision to grant final approval should be guided by the Ninth Circuit's strong "[j]udicial policy [that] favors settlement in class actions . . . where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation." *Velazquez*, 2018 WL 828199, at *4. As the Ninth Circuit has recognized:

> The court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

---

[3] Should any objections or requests for exclusion be received, Lead Plaintiff will address them in his reply papers, which are due to be filed with the Court on June 17, 2022.

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

"Under [Rule] 23(e)(2), a district court may approve a class action settlement only after a finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, recently amended Rule 23(e)(2) provides that courts should consider whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal negotiated at arm's-length;

(C)  the relief provided for the class adequate, taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitable relative to each other.

Rule 23(e)(2)'s "first and second factors are viewed as 'procedural' in nature, and the third and fourth factors are viewed as 'substantive' in nature." *Hudson v. Libre Tech. Inc.*, 2020 WL 2467060, at *5 (S.D. Cal. May 12, 2020).

Consistent with this guidance, the Ninth Circuit has long identified similar factors that courts may consider in deciding whether to approve a class settlement:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 556, 575 (9th Cir. 2004).[4] "District courts may consider some or all of these factors." *Campbell*, 951 F.3d at 1121. Further, "[t]his list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tuscan Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Moreover, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs*, 955 F.2d at 1291; *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

As set forth below, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and the law of the Ninth Circuit.

### A.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

The first Rule 23(e) factor—whether Lead Plaintiff and Lead Counsel "have adequately represented the class"—favors approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(A). "This analysis is 'redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively.'" *Hudson*, 2020 WL 2467060, at *5 (quoting *Newberg on Class Actions* § 13:48 (5th ed.)); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

---

[4] The "goal" of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Campbell*, 951 F.3d at 1121 n.10.

Here, Lead Plaintiff and Lead Counsel adequately represented the Class by zealously advocating on their behalf during both the litigation of this Action and its settlement. *See generally* Walker Decl. ¶ 4. Lead Plaintiff's claims are typical of and coextensive with the claims of the Class, and Lead Plaintiff has no antagonistic interests; rather, Lead Plaintiff's interests in obtaining the largest possible recovery are aligned with other Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."); *see also* Preliminary Approval Order (ECF No. 69 at 3-4).

Lead Plaintiff has also diligently represented the interests of the Class. Specifically, Lead Plaintiff spent a significant amount of time contributing to the litigation and benefitting the Class by: reviewing the revelvant documents, including court filings; staying apprised of developments on the case and making himself available to Lead Counsel; providing Lead Counsel with information and materials regarding his investments; responding to document requests and interrogatories propounded by Defendants; attending the ENE Conference; and conferring with Lead Counsel throughout the litigation, including the ENE Conference and Settlement Negotiations. *See* Walker Decl. ¶ 101 & Ex. 5 (Declaration of Scott Kuhne at ¶¶ 4-5, 10). Lead Plaintiff therefore had an informed understanding of the strengths and weaknesses of the claims, and supports the Settlement. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 430 (3d Cir. 2016) (affirming district court's finding that "class representatives ably discharged their duties by closely following the litigation, authorizing the filing of the Class Action Complaint, and approving the final settlement.").

Further, Lead Plaintiff retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel has successfully prosecuted securities class

actions and complex litigation in federal and state courts throughout the country. *See* Walker Decl. Ex. 4 (Block & Leviton Firm Resume). Lead Counsel pursued this Action vigorously from the outset. By the time the Settlement was reached, Lead Counsel had, among other things: (i) reviewed and analyzed Gossamer's SEC filings, press releases, investor conference call transcripts, and other public statements, as well as (a) publicly available documents, reports, announcements, and news articles concerning Gossamer, and (b) research reports prepared by securities and financial analysts regarding Gossamer; (ii) worked with a damages and loss causation expert to analyze Gossamer's stock price movement and to consider Gossamer's potential arguments at class certification and summary judgment; (iii) drafted the comprehensive, factually-detailed First and Second Amended Complaints; (iv) engaged in briefing related to Defendants' motion to dismiss; (v) served and responded to numerous discovery requests; (vi) briefed Lead Plaintiff's motion for class certification; (vii) drafted and exchanged detailed mediation statements that set forth the facts of the case and analyzed the strengths of the Action and potential damages; (viii) engaged in an ENE conference facilitated by the Honorable Daniel E. Butcher; (ix) conducted protracted and time-intensive negotiations regarding the terms of the proposed Settlement; and (x) drafted the initial versions of the Stipulations and exhibits. Walker Decl. ¶ 78.

Importantly, the Class benefited from Lead Counsel's thorough and efficient prosecution of this Action, which led to the well-informed Settlement without the delays and significant costs associated with formal discovery in complex class actions. *Id.* ¶¶ 74-76. "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)); *see also In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (approving settlement reached

"early in the case, just days before the scheduled hearing on Defendants' Motion to Dismiss[,]" where pleadings, investigation and consultation with damages expert evidenced that plaintiff "possesses sufficient information to make an informed settlement decision."). The efficiency of Lead Counsel was particularly beneficial here, as the Class faced significant challenges in establishing Defendants' liability and in demonstrating that the Class suffered damages.

Finally, Lead Counsel has thoroughly evaluated the strengths and weaknesses of this Action and firmly believes that the Settlement represents an excellent result for the Class. Walker Decl. ¶ 62. *See Martin v. AmeriPride Servs, Inc.*, 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) (where counsel has substantial experience in the type of litigation before the court, "their support of the settlement should be accorded significant consideration."); *Nat'l Rural Telcoms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts underlying the litigation."). Lead Plaintiff and Lead Counsel have, therefore, adequately represented the Class.

## B. The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel

The Settlement was achieved through protracted negotiations, including a mediation session facilitated by a neutral and experienced mediator. This favors approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(B); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *see also Roberti v. OSI Sys, Inc.,* 2015 WL 832996, at *3 (C.D. Cal. Dec. 8, 2015) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Settlement was reached through sustained, good-faith bargaining. Among other things, the Settling Parties participated in an ENE Conference overseen by the

Honorable Daniel E. Butcher. Prior to the ENE Conference, the Settling Parties exchanged detailed ENE statements on the salient factual and legal issues. Specifically, the Settling Parties disputed: (1) whether Lead Plaintiff adequately alleged materially false and misleading statements, and negative causation; (2) whether Lead Plaintiff would be able to certify a class; (3) whether Lead Plaintiff's remaining claim would survive summary judgment or at trial; and (4) whether the Class suffered damages and, if so, the amount of damages. Walker Decl. ¶ 34. During the full-day session, the Settling Parties presented their respective legal positions in the case. The ENE Conference ended without reaching an agreement. *Id*. After the unsuccessful ENE Conference, the Settling Parties continued to engage in informal settlement discussions. Those discussions ultimately resulted in an agreement to settle the Action. *Id*. ¶ 35. That the ENE Conference before Magistrate Judge Butcher was unsuccessful, and required further negotiations while the Settling Parties continued to litigate, supports an inference that the Settlement was the product of arm's-length negotiations. *See, e.g., Hicks v. Morgan Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.").

The settlement negotiations were conducted at arm's-length by experienced counsel who were well-aware of the strengths and weaknesses of the case. Lead Counsel have many years of experience litigating securities fraud class actions and have negotiated numerous class settlements, which have been approved in courts throughout the country. Walker Decl. ¶ 74. Additionally, throughout the Action and settlement negotiations, the Gossamer Defendants have been vigorously represented by Latham & Watkins LLP and the Underwriter Defendants by O'Melveny & Myers LLP – both highly respected firms with strong reputations for the tenacious defense of class actions and other complex civil matters. *Id*. ¶ 77. Accordingly, this factor weighs in favor of approval.

### C. The Settlement Provides Adequate Relief to the Class

Rule 23(e)(2)(C), which overlaps considerably with those articulated by the Ninth Circuit prior to the 2018 amendments, instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ("To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation . . . with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." Here, the Settlement undoubtedly provides adequate relief for the Class, particularly when taking into account the costs, risks, and delay of further litigation, and the other relevant factors.

### 1. The Risks of Continued Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Velazquez*, 2018 WL 828199, at *4; Rule 23(e)(2)(C)(i); *Churchill*, 361 F.3d at 576. Although Lead Plaintiff believes in the merits of the Action, that confidence must be tempered by the fact that the Settlement is certain and that every case involves the risk of no recovery, particularly in a complex case such as this one. There is no question that to prevail here, Lead Plaintiff would have confronted a number of significant legal and factual challenges, challenges that the Court itself highlighted in its decision on Defendants' motion to dismiss. ECF No. 39.

Although Lead Plaintiff partially succeeded in defeating Defendants' motion to dismiss, the Court dismissed all but one of Lead Plaintiff's claims. With respect to the Remaining Claim—concerning Gossamer's statements regarding the public release of Gossamer's interim analysis of clinical trial results from its Phase 2 LEDA

trial—the Court found that "reasonable minds could disagree on whether Gossamer's statements . . . were material misrepresentations." ECF No. 39 at 13. The Court also rejected Defendants' negative causation defense, noting that "the issue is more appropriate for resolution at a later stage." *Id*. at 13-14.

Lead Plaintiff faced the immediate challenge of overcoming Defendants' likely arguments to his motion for class certification. Specifically, Lead Plaintiff expected Defendants to argue that many investors were aware that Gossamer never intended to disclose the interim results from the Phase 2 LEDA trial, and therefore, individualized issues would predominate, precluding class certification. While Lead Plaintiff believes that a class would have been certified, the risk of not obtaining class certification favored settlement. *See, e.g., Harris v. Best Buy Stores, L.P.,* 2018 WL 3932178, at *5 (N.D. Cal. Aug. 16, 2018) ("individualized inquiries are inappropriate for certification under Rule 23(b)(3)").

Next, Lead Plaintiff would have to defeat Defendants' inevitable arguments on materiality, negative causation, and damages. Lead Plaintiff believes that the Court's motion to dismiss decision makes it unlikely that Defendants' materiality challenges would succeed at summary judgment and that the issue would ultimately be decided by a jury. But success at trial would be far from assured – as the Court itself noted – "reasonable minds could disagree on whether Gossamer's statements about the availability of the interim analysis results of the Phase 2 LEDA trial were material misrepresentations." ECF No. 39 at 13. Indeed, there was the risk that a jury might not find that Gossamer's Registration Statement indicated the Company planned to release interim results at all, and thus no misrepresentations were made. Lead Plaintiff would also have to overcome the possibility that a jury would find any misrepresentation immaterial as evidenced by, among other things, the fact that Gossamer's stock price only dropped $0.67 cents per share when the Company's CEO stated they would not be releasing interim results in November of 2019. *See In*

*re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("merely reaching trial is no guarantee of recovery").

Lead Plaintiff would seek to defeat Defendants' negative causation[5] defense by arguing that the November 2019 corrective disclosure was not a complete corrective disclosure as Defendants continued to indicate the Company would disclose an indication of the results of the interim analysis of the Phase 2b LEDA study—even if they did not plan to release the actual results. Therefore, Defendants would be required to prove that none of the decline in value of Gossamer stock through April 3, 2020 (the date the complaint was filed), was attributable to Gossamer's false promise to release the results of the interim study.[6] Deciding the issue of negative causation at summary judgment would therefore require significant discovery into the causes of the price movement of Gossamer's stock over a significant period of time, the "value" of Gossamer's stock, and an expensive battle of the experts. Even if Lead Plaintiff defeated summary judgment, Defendants would undoubtedly have presented their negative causation defense and vigorously contested Plaintiffs' proposed damages methodology to a jury, where it would be

---

[5] Negative causation is an affirmative defense, which "prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentations or omissions in the registration statement." *Hildes v. Arthur Anderson LLP*, 734 F.3d 854, 860 (9th Cir. 2013). This requires Defendants to essentially prove that all of Lead Plaintiff's losses were attributable to factors other than the misstatement upheld by the Court. *See Id*. at 861.

[6] Under Section 11 of the Securities Act, a Plaintiff is entitled to damages of "the price difference between the amount paid for the security [not exceeding the IPO price] . . . and the value thereof as of the time such suit was brought," *i.e.*, April 3, 2020. 15 U.S.C. § 77k(3). The "overwhelming majority of the courts in this and other circuits analyzing the issue . . . have held that 'value' and 'price' are not always identical." *In re Snap Inc. Sec. Litig.*, 2018 WL 361674, at *2 (C.D. Cal. Aug. 8, 2018). So determining Gossamer's value on April 3, 2020—which is necessary to prove Defendants' negative causation defense—requires discovery into what Gossamer knew about the interim study results and what its intentions were about releasing the results, not just reference to Gossamer's trading price.

impossible to predict with any certainty which arguments would prevail. Although Lead Plaintiff's damages expert estimated maximum recoverable damages between $53.6 million and $73.2 million, actual damages were likely to be significantly lower. Among other things, Lead Plaintiff would have to contend with the fact that the market's reaction to the November 2019 corrective disclosure was only a drop of $0.67 per share, that the Gossamer's share price in November 2019 was still above its IPO price of $16.00 per share, and the risk that a jury would attribute a significant amount of the decline in Gossamer's value to factors other than the Remaining Claim. Accordingly, the risk of going before a jury on the complex issues of negative causation and damages weigh strongly in favor of settlement. *See, e.g., Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky") (citation omitted); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions") *aff'd*, 798 F.2d 35 (2d Cir. 1986).

While Lead Plaintiff is confident in the merits of this Action, success is never guaranteed. *See, e.g., Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted). *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss

causation grounds and error in jury instruction.[7] Even success at trial carries the substantial risk of reduced recovery. *See e.g., Hsu v. Puma Biotech., Inc.*, No. 8:15-cv-00865-AG-ASK (C.D. Cal.) (Dkt. 734-2) (press release highlighting that in first federal securities class action to reach a verdict in nearly ten years, jury returned a verdict resulting in total damages of $9 to $18 million in a case where "Plaintiffs' estimated potential class-wide damages exceeded $1.1 billion."). Accordingly, the risks of continued litigation weigh heavily in favor of approval.

### 2. The Complexity, Expense and Duration of Continued Litigation

In addition to the risk of continued litigation, in evaluating the fairness of the Settlement, the "expense, complexity and likely duration of further litigation" or "delay of trial and appeal" should be taken into account. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Churchill*, 361 F.3d at 576. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Here, these factors further underscore the fairness of the Settlement.

Securities fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See*, *e.g.*, *Par Pharm.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) ("Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate."). Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty

---

[7] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006). In addition to the substantial risks described above, Lead Plaintiff and Lead Counsel recognize the significant time and expense involved in prosecuting this Action against Defendants through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. Walker Decl. ¶¶ 45-54. *See e.g.*, *In re Amgen Sec. Litig.*, 2016 WL 10571773, at \*3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."); *Destefano v. Zynga Inc.*, 2016 WL 537946, at \*10 (N.D. Cal. Feb. 11, 2016) ("continuing litigation would not only be costly – representing expenses that would take away from any ultimate classwide recovery – but would also delay resolution and recovery for Settlement Class Members"). Thus, the complexity, expense and duration of further litigation supports final approval of the Settlement.

### 3. The Amount Offered in Settlement

In evaluating the fairness of a settlement, a fundamental question is how the value of the settlement compares to the amount the class could potentially recover at trial, discounted for risk, delay, and expense. Thus, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Mego*, 213 F.3d at 459. Indeed, "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

In light of the potential recovery at trial and the risks and expenses of continued litigation, the proposed $2.375 million Settlement is well within the range of reasonableness. Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed on his remaining claim at both summary judgment and after a jury trial, and if the Court and jury accepted Lead Plaintiff's damages theory—*i.e.*, Lead Plaintiff's ***best-case scenario***—the total ***maximum*** damages would be between $53.6 million and $73.2 million. Walker Decl. ¶ 53. However, as set forth above, Lead Plaintiff faced substantial risks that made the likely recoverable damages much lower.

The $2.375 million Settlement is also favorable when compared with prior settlements approved in the Ninth Circuit and throughout the country. The Settlement Amount represents approximately 3.2% to 4.4% of the total ***maximum*** damages ***potentially*** available in this Action. *Id.* ¶ 63. In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See Id*. Ex. 3 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at p. 20, Fig. 16)). Courts have approved numerous settlements that recovered a similar percentage of maximum damages. *See, e.g., Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement representing "slightly more than 2% of [] estimated damages" and noting that the recovery "is consistent with the 2-3% average recovery that the parties identified in other securities class action settlements."); *Int'l Bhd. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering approximately 3.5% of maximum damages that plaintiffs could have recovered at trial and noting that amount was within median recovery in securities class actions settled in last few years); *In re Broadcom Corp., Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 12, 2005) (approving settlement representing 2.7% of damages and finding such percentage was "not []

inconsistent with the average recovery in securities class action[s]"). Considered against the extensive risks involved with prosecuting this Action further, the amount provided by the Settlement is fair, reasonable, and adequate.

### 4.      The Reaction of Class Members

"In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth Circuit typically consider the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020). "The absence of a larger number of objectors supports the fairness, reasonableness, and adequacy of the settlement." *Velazquez*, 2018 WL 828199, at *6. Here, as of the date of this filing, no objections to the Settlement have been filed. Walker Decl. ¶ 44. Moreover, Lead Plaintiff supports and endorses the Settlement as well. Walker Decl. Ex. 5 (Kuhne Decl. ¶ 7). This factor favors approval of the Settlement.

### 5.      The Remaining Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), the Court must also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports the Settlement's approval or is neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

First, pursuant to Rule 23(e)(2)(C)(ii), the method for processing Class Members' claims and distributing relief to eligible claimants is comprised of well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. *See* Section IV, *infra*. Here the Court-approved Claims Administrator, Angeion, will review and process claims under the guidance of Lead

Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. Walker Decl. ¶¶ 55-57; Cudworth Decl. Ex. A (Notice at 8-13). Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]

Second, pursuant to Rule 23(e)(2)(C)(iii), the relief provided for the Class is adequate when the terms of the proposed award of attorneys' fees are considered. As discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Request for an Award of Attorneys' Fees and Reimbursement of Expenses, the proposed attorneys' fees of 25% are reasonable in light of Lead Counsel's substantial work and efforts, the results achieved, and relative awards in similar cases. Indeed, courts in the Ninth Circuit repeatedly "permit awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as the benchmark award." *In re NCAA Ath. Grant-in-Aid Cap Antirust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (collecting cases); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.,* 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (finding 25% fee award "reasonable in light of the amount of efforts expended to achieve the settlement."). Most importantly, the Court's approval of the proposed award of attorneys' fees is separate from approval of the Settlement, and neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on the ultimate award of

---

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶ 8.2.

attorneys' fees or expenses. *See* Stipulation ¶ 7.4.[9]

Third, Rule 23(e)(2)(C)(iv) requires the Court to consider the fairness of the proposed settlement in light of "any agreements required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the Settling Parties have entered into a confidential agreement which establishes certain conditions under which Defendants may terminate the Settlement if Class Members, who collectively purchased a specific number of shares of Gossamer common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

### D. The Proposed Form and Method of Notice to the Class is Appropriate

Rule 23(e)(2)(D) requires the Court to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). As discussed in Section III below, the Net Settlement Fund will be distributed among all Authorized Claimants in accordance with the Plan of Allocation, which provides a fair and equitable method of allocating the Net Settlement Fund. Specifically, all Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on their transactions in Gossamer common stock during the Class Period.

---

[9] In connection with its fee request, Lead Counsel also seeks reimbursement of $27,319.38 in reasonable and necessary costs and expenses incurred in prosecuting and resolving this Action, as well as reimbursement of Lead Plaintiff's costs related to his representation of the Class in the amount of $5,000. Walker Decl. ¶¶ 92, 97.

### III. THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Notice to members of a proposed settlement must be directed in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B) and be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Court approved the notice program in the Preliminary Approval Order,[10] and Lead Plaintiff has executed the notice program in accordance with the provisions therein. Walker Decl. ¶¶ 37-43. Notice was given to Class Members via mailing of the Notice Packet, the Settlement Website, and publication. *Id*. ¶¶ 38-40. Copies of the Court-approved Notice Packet were timely mailed by the Court-appointed Claims Administrator, Angeion, to an aggregate of 27,340 potential Class Members and the largest brokerage firms, banks, institutions, and other nominees. Walker Decl. ¶ 38; Cudworth Decl. ¶ 8.

The Notice described, among other things, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Class. *See generally* Cudworth Decl. Ex. A (Notice). The Notice also stated the deadlines for objecting, seeking exclusion and submitting claims, and advised potential Class Members of the scheduled Settlement Hearing before this Court. *Id*.

---

[10] The Preliminary Approval Order found that the form and content of the Notice, Summary Notice, and methods for notifying the Settlement Class, "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1(a)(7), as amended, and all other applicable laws and rules." Preliminary Approval Order, ¶ 8.

Additionally, on April 18, 2022, the Court-approved Summary Notice was published in *Investor's Business Daily* and was published in *The Wall Street Journal* on April 20, 2022. Walker Decl. ¶ 40; Cudworth Decl. ¶ 9. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See* Cudworth Decl. Exs. B, C. Finally, the Claims Administrator posted the Notice, Claim Form, and other relevant documents online at the Settlement Website, www.GossamerSecuritiesLitigation.com, and provided a phone number for Class Members to call with any questions concerning the Settlement. Walker Decl. ¶ 43; Cudworth Decl. ¶¶ 10-11. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See e.g.*, *Young v. LG Chem, Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019) ("The content of the notice is sufficient if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citation omitted); *Zimmer Paper Prods, Inc. v. Berger Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) (collecting cases and stating that "[i]t is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*5 (approving notice program that included direct mailing, publication, and the maintenance of a dedicated settlement website).

Accordingly, the robust notice program here provided sufficient information for Class Members to make informed decisions regarding the Settlement, fairly apprised them of their rights with respect to the Settlement, represented the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). "Approval of an allocation plan under [Rule] 23 is governed by the same standards applicable to the overall settlement – the plan must be both fair and reasonable." *In re Wireless Facilities, Inc. Sec. Litig. II*, 2008 WL 11338455, at *6 (S.D. Cal. Dec. 19, 2008) (citing *Class Plaintiffs*, 955 F.2d at 1284). The aim of such a plan "is to provide an equitable basis for distributing the settlement fund. The allocation formula and overall plan, especially when created by experienced counsel, needs only a reasonable, rational basis for approval." *Id*. at *17-18; *Nguyen*, 2014 WL 1802293, at *5 (same). A plan that "reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

Here, Lead Plaintiff prepared the Plan of Allocation after careful consultation with economic expert Chad Coffman of Global Economics Group, LLC, with the objective of equitably distributing the Net Settlement Fund to Class Members. Walker Decl. ¶ 55. The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan. Walker Decl. ¶ 56; Cudworth Decl. ¶ 15 & Ex. A (Notice at 8-13).

The Plan of Allocation provides for distribution of the Net Settlement Fund to Authorized Claimants who submit timely and valid Claim Forms demonstrating a loss on their transactions in Gossamer securities during the Class Period. The formula to apportion the Net Settlement Fund among Authorized Claimants provides for a *pro rata* distribution of the Net Settlement Fund subject to a discount for § 10(b) claimants, as those claims were ultimately not pressed in Court. Walker Decl. ¶ 57. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. Nov. 26, 2007) (granting final approval where plan of allocation similarly differentiated between § 11 and §10(b) claims). Because the proposed Plan of

Allocation does not unjustly favor any Class Member, segment of the Class, or Lead Plaintiff, this factor supports the Court should approve the Plan of Allocation. *See, e.g., Nguyen*, 2014 WL 1802293, at \*5 ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue").[11]

## V. THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY

In connection with his Preliminary Approval Motion, Lead Plaintiff requested provisional certification of the Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to request exclusion, object, or submit Claim Forms to be eligible for a payment from the Settlement, could be issued. In its Preliminary Approval Order, the Court found the class action prerequisites under Rule 23(a) and (b)(3) to be satisfied and preliminarily certified the Class for settlement purposes only. Preliminary Approval Order, at 3-4. Because nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes only, and no objections have been received to date, the Court should grant final class certification.

---

[11] Pursuant to the PSLRA, Lead Plaintiff will separately seek reimbursement of costs and expenses incurred as a result of his representation of the Class in an amount not to exceed \$5,000. *See* 15 U.S.C. § 77z-1(a)(4). "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.,* 2011 WL 1627973, at \*9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

## VI. THE PARTIES HAVE AMENDED THE SETTLEMENT STIPULATION TO ADDRESS AN ERROR

The Court should also be aware that the parties have entered an Amendment to the Stipulation (Walker Decl. Ex. 1), which addresses an error in the Stipulation of Settlement and Exhibits previously filed in this Action. In short, the Stipulation and its exhibits mistakenly referred to a Class Period that ran through December 13, 2020, rather than December 13, 2019, due to a typo in the original complaint filed in this Action. *See* Walker Decl. Ex. 1; ECF No. 1. The Amendment addresses this error and makes clear that the parties intended to settle claims only through December 13, 2019. Lead Plaintiff will work with the Claims Administrator to inform the Class through the Settlement Website, and by responding to inquiries or submissions that include transactions during the mistaken December 14, 2019-December 13, 2020 period. Walker Decl. Ex. 1 at ¶¶ 2-3. Counsel for Lead Plaintiff will also, at its own expense, issue a press release to inform the Class about the Amendment. *Id*. ¶ 4. Because the original error was overinclusive, it did not cause any Class Member to fail to receive notice of the Settlement.

## VII. CONCLUSION

For the reasons set forth herein, Lead Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement; (ii) approve the Plan of Allocation; and (iii) finally certify the Class for settlement purposes only.

May 20, 2022

**BLOCK & LEVITON LLP**

/s/ Jacob A. Walker
Jacob A. Walker (SBN 271217)
Jeffrey C. Block (admitted *pro hac vice*)
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jake@blockleviton.com
jeff@blockleviton.com

*Attorneys for Lead Plaintiff and the Proposed Class*