Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jake@blockleviton.com

*Attorneys for Lead Plaintiff
and the Proposed Class*

[*Additional Counsel Listed on Signature Page*]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT KUHNE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GOSSAMER BIO, INC., SHEILA GUJRATHI, M.D., BRYAN GIRAUDO, FAHEEM HASNAIN, JOSHUA H. BILENKER, M.D., KRISTINA BUROW, RUSSELL COX, THOMAS DANIEL, M.D., RENEE GALA, OTELLO STAMPACCHIA, Ph.D., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, SVB LEERINK LLC, BARCLAYS CAPITAL INC., and EVERCORE GROUP L.L.C., <br><br> Defendants. | Case No.: 3:20-cv-00649-DMS-DEB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** <br><br> Date: June 24, 2022 <br> Time: 1:30 pm <br> Judge: Hon. Dana M. Sabraw <br> Dept.: 13A |

**TABLE OF CONTENTS**

I.     Preliminary Statement .................................................................................. 1

II.    Lead Counsel's Request for Attorneys' Fees is Reasonable and Should be
       Approved ..................................................................................................... 3

   A.  Lead Counsel is Entitled to a Reasonable Fee from the Common Fund
       Created by the Settlement ...................................................................... 3

   B.  The Court Should Award Attorneys' Fees Based on the Percentage-of-
       Recovery Method ................................................................................... 4

   C.  The Requested Fee is Reasonable ........................................................ 6

       1.  The Result Achieved.......................................................................... 7

       2.  The Substantial Risks of the Litigation............................................. 7

       3.  The Skill Required and Quality of Work............................................ 9

       4.  The Contingent Nature and Financial Burden ................................ 10

       5.  The Awards in Similar Cases............................................................ 12

   D.  A Lodestar Crosscheck Confirms the Reasonableness of the Fee Sought... 12

   E.  Lead Counsel's Litigation Expenses are Reasonable and Should be
       Approved............................................................................................... 14

   F.  Lead Plaintiff Should be Awarded His Reasonable Costs Under the PSLRA.
       ............................................................................................................... 15

III.  Conclusion ................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Atlas v. Accredited Home Lenders Holding Co.*,
2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)...................................................... 6

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013).................................................................... 10

*Blum v. Stenson*,
465 U.S. 886 (1984) ..................................................................................... 5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................................... 4

*Buccellato v. AT&T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011)..................................................... 13

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ....................................................................... 5

*Cassese v. Williams*,
503 F. App'x 55 (2d Cir. 2012)...................................................................... 5

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................... 8, 9, 12

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................... 4

*Elkin v. Walter Inv. Mgmt. Corp.*,
2018 WL 8951073 (E.D. Pa. Dec. 18, 2018)....................................................... 16

*Ellison v. Steve Madden, Ltd.*,
2013 WL 12124432 (C.D. Cal. May 7, 2013)...................................................... 5

*Fischel v. Equitable Life Assurance Soc'y*,
307 F.3d 997 (9th Cir. 2002) ......................................................................... 8

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009)................................................................ 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015)................................................................ 11

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................ 5

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ................................................................ 5

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ................................................................ 4

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ................................................................ 14

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4156342 (S.D. Cal. Oct. 15, 2010)................................................................ 12

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (N.D. Cal. Oct. 25, 2016) ................................................................ 16

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................ 5, 13

*In re Brocade Sec. Litig.*,
No. 3:05-cv-02042-CRB (N.D. Cal. Jan. 26, 2009) ................................................................ 13

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1130 (S.D. Fla. 2011)................................................................ 11

*In re DJ Orthopedics, Inc. Sec. Litig.*,
2004 WL 1445101 (S.D. Cal. June 21, 2004) ................................................................ 7

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1997)................................................................ 10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...................................................................................... 5

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) .......................................................... 9

*In re NCAA Ath. Grant-in-Aid Cap Antirust Litig.*,
768 F. App'x 651 (9th Cir. 2019)............................................................................ 12

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)........................................................... passim

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)....................................................................................... 5

*In re VA Data Theft Litig.*,
653 F. Supp. 2d 58 (D.D.C. 2009).............................................................................. 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................ 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .................................................................................... 4

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................................................... 7

*Nat'l Fed'n of the Blind v. Target Corp.*,
2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) .......................................................... 10

*Nguyen v Radient Pharm. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014).............................................................. 6

*O'Connor v. Oakhurst Dairy*,
No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018)............................. 5

*Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*,
2021 WL 2981970 (D. Colo. July 15, 2021) .......................................................... 11

*Rawlings v. Prudential-Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) ................................................................................. 5

*Roberti v. OSI Systems, Inc.*,
2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ...................................................... 13

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) .............................................................................. 5

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ................................................... 16

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...................................................... 7

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) .............................................................................. 4

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................................. 6, 7, 12

**Statutes**

15 U.S.C. § 77z-1(a)(4) ........................................................................................ 15

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) ................................. 7

Having achieved a $2,375,000 all-cash settlement that resolves all outstanding claims in this Action, Lead Counsel respectfully submit this memorandum of law in support of their motion seeking an Order awarding attorneys' fees in the amount of 25% or $593,750 of the Settlement Fund and approving reimbursement of Litigation Expenses incurred by Lead Counsel.[1]

## I.    PRELIMINARY STATEMENT

The Settlement, which provides for an all-cash recovery of $2,375,000, is a substantial and certain recovery obtained for the Class achieved through the skill, experience, and effective advocacy of Lead Counsel in the face of considerable risk and opposition from highly experienced and skilled defense counsel. Lead Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Accordingly, Lead Counsel is requesting an award of 25% of the common fund, which is the benchmark set by the Ninth Circuit in cases such as this.

As described below and in the accompanying Declaration of Jacob A. Walker in Support of: (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation and Certification of the Class for Settlement Purposes Only; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Walker Decl."), Lead Counsel vigorously pursued this Action from its outset. The decision to settle was well-informed by hard fought litigation that involved a comprehensive investigation; preparation of a detailed Amended Complaint; briefing related to Defendants' motion to dismiss; preparation of Lead Plaintiff's motion for class certification; serving and responding to discovery requests; analysis of damages issues; and a hard-fought settlement process with

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation. ECF No. 66-2.

experienced defense counsel that included an ENE Conference facilitated by the Hon. Daniel E. Butcher. *See generally*, Walker Decl. ¶ 4.

Lead Counsel assumed all risks in litigating this Action by taking this case on a fully contingent basis and devoted substantial resources to prosecuting the Action against well-resourced opposing counsel in order to achieve the Settlement. The quality legal work Lead Counsel dedicated to the prosecution of this Action—and the significant risk they took on by prosecuting this Action with no guarantee of recovery—justifies a fee of 25% of the Settlement Fund. As discussed below, this fee request is: (i) the "benchmark" for attorneys' fee awards set by the Ninth Circuit; (ii) consistent with or below fees awarded in other securities and complex class actions; and (iii) consistent with the agreement Lead Plaintiff entered into with Lead Counsel at the outset of the Action.

Lead Plaintiff has actively supervised this Action since his appointment as Lead Plaintiff, has evaluated Lead Counsel's fee request, and has endorsed it as fair and reasonable. *See* Declaration of Scott Kuhne, ("Kuhne Decl.") ¶¶ 6-9 (attached to the Walker Declaration as Exhibit 5). The reaction of the Class to date also supports the request for attorneys' fees and reimbursement of Litigation Expenses. Pursuant to the Court's March 14, 2022 Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice to the Class (the "Preliminary Approval Order") (ECF No. 69), the Court-Appointed Claims Administrator Angeion Group ("Angeion" or the "Claims Administrator"), caused the Notice and Claim Form (together the "Notice Packet") to be mailed to potential Class Members. *See* Declaration of Brittany M. Cudworth of Angeion Group, Regarding: (A) Mailing of Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received ("Cudworth Decl.") ¶¶ 4-8 (attached to the Walker Declaration as Exhibit 2). A total of 27,340 Notice Packets have been mailed as of May 19, 2022. *Id*. ¶ 8. On or before April 8, 2022, the Notice and Claim Form were also posted to www.GossamerSecuritiesLitigation.com (the

"Settlement Website"). *Id* ¶ 10. The Summary Notice was published in *Investor's Business Daily* on April 18, 2022 and in *The Wall Street Journal* on April 20, 2022. *Id*. ¶ 9. The Notice and Summary Notice advised recipients that Lead Counsel would be applying to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus reimbursement of Litigation Expenses in an amount not to exceed $60,000. *Id.* Exs. A, B, C. The Notice and Summary Notice further informed Class Members that they can object to these requests until June 3, 2022. *Id*. While the deadline to object has not yet passed, to date, no objections to the attorneys' fees or Litigation Expenses set forth in the notices have been filed. Walker Decl. ¶ 61; Cudworth Decl. ¶ 15.[2]

For the reasons discussed herein, Lead Counsel respectfully submits that the requested fee is fair and reasonable, particularly in light of the favorable recovery obtained for the Class in the face of considerable risk. Additionally, the Litigation Expenses for which Lead Counsel seeks reimbursement were reasonable and necessary for the successful prosecution of the Action. Likewise, the request for reimbursement to Lead Plaintiff pursuant to the PSLRA for the time he dedicated to the Action on behalf of the Class is also fair and reasonable. Accordingly, Lead Counsel requests that their Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses be granted in full.

## II. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A. Lead Counsel is Entitled to a Reasonable Fee from the Common Fund Created by the Settlement

Courts in the Ninth Circuit recognize that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including

---

[2] Should any objections be received, Lead Counsel will address them in their reply papers, which are due to be filed with the Court on June 17, 2022.

attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). Further, the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The policy rationale for awarding attorneys' fees from a common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

Courts have also recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). Fee awards in meritorious cases promote private enforcement of, and compliance with, the federal securities laws, which "seek to maintain public confidence in the marketplace. They do so by deterring fraud, in part, through the availability of private securities fraud actions." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

**B.**     **The Court Should Award Attorneys' Fees Based on the Percentage-of-Recovery Method**

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks as attorneys' fees a reasonable percentage of the fund recovered for the Class. The percentage method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common fund cases throughout the United States. A percentage fee award is appropriate because it encourages counsel to obtain the maximum recovery for the class at the earliest possible stage of the litigation and, hence, most fairly correlates counsel's compensation to the benefit achieved for the class.

The Supreme Court has long recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class."[3] Since *Blum v. Stenson*, virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining the amount of attorneys' fees in common fund cases.[4]

Likewise, district courts within the Ninth Circuit have routinely held that the percentage of the fund method is the preferred method for calculating attorneys' fees in common fund cases. *See, e.g., Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage-of-recovery method to award 25% fee); *Ellison v. Steve Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the

---

[3] *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

[4] *See, e.g., See e.g.,Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (affirming the district court's decision to employ a "'percentage of the recovery' approach as a starting point in calculating the fee award.") (*citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 45 (2d Cir. 2000)); *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.") (citations omitted); *In re VA Data Theft Litig.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009) (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993)); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *O'Connor v. Oakhurst Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) ("The First Circuit has approved of the [percentage of fund] method as the prevailing approach used in common fund cases.") (*citing In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)).

"dominant approach in common fund cases"); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (same).

Courts have found the percentage-of-recovery method for awarding attorneys' fees preferable in cases with a common fund recovery because it: (i) parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; (ii) aligns the lawyers' interests with those of the class in achieving the maximum possible recovery; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See OmniVision*, 559 F. Supp. 2d at 1046; *Nguyen v Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014).

Accordingly, Lead Counsel respectfully requests that this Court calculate attorneys' fees in this case under the percentage-of-recovery method.

### C.    The Requested Fee is Reasonable

For their efforts in creating a common fund, Lead Counsel seeks 25% of the Settlement Fund, plus reimbursement of $27,319.38 in Litigation Expenses. These requests are fair reasonable under the relevant standards.

Courts in the Ninth Circuit assessing the reasonableness of the percentage fee award consider the following factors: (1) the results achieved; (2) the risks of the litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See OmniVision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-51 (9th Cir. 2002).[5] Each of the foregoing factors confirms that the requested 25% fee is fair and reasonable.

---

[5] "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009).

### 1.     The Result Achieved

Courts consistently recognize that the result achieved is an important factor in determining an appropriate fee award. *See Vizcaino*, 290 F.3d at 1048 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees); *In re DJ Orthopedics, Inc. Sec. Litig.*, 2004 WL 1445101, at *7 (S.D. Cal. June 21, 2004) (same).

Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed on his remaining claim at both summary judgment and after a jury trial, and if the Court and jury accepted Lead Plaintiff's damages theory—*i.e.*, Lead Plaintiff's ***best-case scenario***—the total ***maximum*** damages would be between $53.6 million and $73.2 million. Walker Decl. ¶ 53. However, as discussed below, Lead Plaintiff faced substantial risks that made the likely recoverable damages much lower – and the possibility of no recovery at all was not insignificant. Thus, the Settlement, which represents approximately 3.2% to 4.4% of the total ***maximum*** damages ***potentially*** available in this Action is an excellent result. *See Vataj v. Johnson*, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (finding settlement "represents an excellent result for class members" where recovery was 2% of estimated damages, was consistent with other securities class action settlements, and no class members objected). In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at 20, Fig. 16 (attached to the Walker Declaration as Exhibit 3). Accordingly, the result achieved supports the fee request.

### 2.     The Substantial Risks of the Litigation

Courts also consider the risks of litigation in determining an appropriate fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) ("The risk that further litigation might result in Plaintiffs

not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at \*17 (N.D. Cal. Feb. 11, 2016) (approving fee request and noting "as to the second factor . . . the risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation.").

As discussed in greater detail in the Final Approval Brief, at Section II.C.1, there were many substantial challenges to succeeding in this litigation and to obtaining a common fund recovery. *First*, this was a challenging case from the outset and there was a real risk that the Action would not proceed past the motion to dismiss stage, as evidenced by the Court's decision dismissing all but one of Lead Plaintiff's claims.[6] *Second*, the Class faced a potential barrier to class certification based on Defendants' anticipated argument that many class members actually knew that Gossamer did not intend to release its interim results, which presented individualized questions that would overwhelm any common questions and thus preclude certification of a class. *Third*, convincing a jury that Defendants made a material misrepresentation was far from guaranteed given the nature of alleged misstatement sustained by the Court and Defendants' inevitable argument that the market did not react in November of 2019 when Gossamer's CEO informed investors that the Company would not be releasing the interim study results. *Fourth*, overcoming Defendants' negative causation defense at summary judgment and trial would come down to an expensive, and highly uncertain battle of the experts. *Fifth*, the classwide damages amount was highly dependent on the plaintiff-friendly assumptions and

---

[6] For purposes of reviewing the reasonableness of a fee award, courts consider all risks the litigation from the outset. *See Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1009 (9th Cir. 2002) ("there is no dispute that a court should consider risk at the 'outset' of litigation," which the Ninth Circuit has determined to be the point in time "when an ordinary attorney determines that there is merit to the client's claim and elects to pursue the claim on the client's behalf").

method used to measure those damages. The arguments raised by Defendants could have materially reduced the amount of recoverable damages and adversely affected any potential recovery.

While Lead Counsel believed in the merits of the Action, there would be many challenges in establishing all of the requisite elements and a substantial risk that Defendants would prevail at any given stage of the litigation. Thus, the $2.375 million recovery in the face of these risks fully supports the requested fee.

### 3.   The Skill Required and Quality of Work

"The experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.,* 2005 WL 1594389, at \*12 (C.D. Cal. June 10, 2005). Indeed, "[t]he prosecution and management of a complex national class action requires unique legal skills and abilities." *OmniVision*, 559 F. Supp. 2d at 1047.

Lead Counsel are highly experienced in securities litigation and have a long and successful track record of representing investors in such cases. Lead Counsel has successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country, including within this Circuit. *See* Walker Decl. ¶ 74 & Ex. 4 (Block & Leviton Firm Resume). Lead Counsel's experience and skill was critical to defeating, in part, Defendants' motion to dismiss. *See Zynga*, 2016 WL 537946, at \*17 (noting the skill required to litigate complex class actions and that "[t]his is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss."). Additionally, Lead Counsel's reputation as experienced counsel in complex cases, persistent efforts and thorough investigation greatly enhanced Lead Counsel's ability to negotiate the Settlement in an efficient manner to the benefit of the Class. *See* Walker Decl. ¶¶ 75-76.

The quality and vigor of opposing counsel are also important in evaluating the caliber of Lead Counsel's work. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1997) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (same). Defendants are represented by highly experienced and prominent counsel, who vigorously represented their clients. The Gossamer Defendants were represented by Latham & Watkins LLP and the Underwriter Defendants by O'Melveny & Myers LLP. Walker Decl. ¶ 77. The fact that Lead Counsel achieved this excellent result in the face of such formidable legal opposition further evidences the quality of their work.

### 4.    The Contingent Nature and Financial Burden

Lead Counsel undertook this litigation on a contingent fee basis, assuming a significant risk that the litigation would yield no recovery a leave them uncompensated. Unlike counsel for Defendants, who are typically paid an hourly rate and paid for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expense since this case began on April 3, 2020. Walker Decl. ¶ 86. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Nat'l Fed'n of the Blind v. Target Corp.*, 2009 WL 2390261, at \*7 (N.D. Cal. Aug. 3, 2009), the court noted the risks that plaintiffs' counsel had taken:

> Risk of non-payment is also an issue to be considered. 'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.' [internal citations omitted] 'The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with

incentives they have to undertake claims for which they are paid on a fee-for-services basis.'

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the challenges in successfully prosecuting a securities class action. *See OmniVision*, 559 F.2d at 1047. The risk of no recovery in complex cases of this type is very real—even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (ordering new trial on issues relating to loss causation in phase one of bifurcated trial after years of litigation in which plaintiffs prevailed in both phases at trial).

This factor weighs in favor of Lead Counsel's fee request for the additional reason that there would have been no recovery without Lead Counsel's efforts. Lead Counsel filed the initial complaint in this Action and moved for appointment as Lead Counsel in connection with Lead Plaintiff's motion for appointment as Lead Plaintiff. The vast majority of securities class actions draw multiple applications for appointment as lead plaintiff and lead counsel—that is the very purpose of the PSLRA provision requiring notice to be disseminated advising shareholders of the lead plaintiff deadline. Tellingly, not one law firm other than Block & Leviton submitted a leadership application in the Action—a fact that underscores the perceived undesirability and difficulty of taking this case on a contingency basis. Walker Decl. ¶ 89. Courts have "recognize[d] that counsel should be rewarded for taking on a case from which other law firms shrunk[.]" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1130, 1364 (S.D. Fla. 2011); *Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (finding contingent nature of fee weighed in favor of fee request where plaintiffs' counsel was the only law firm to seek appointment as lead counsel).

Thus, the contingent nature of Lead Counsel's representation strongly favors approval of the requested fee.

### 5.    The Awards in Similar Cases

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *See Vizcaino*, 290 F.3d at 1050 n.4. Courts in the Ninth Circuit repeatedly "permit awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as the benchmark award." *In re NCAA Ath. Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (collecting cases). The percentage awarded can be adjusted upward or downward and "in most common fund cases, the award exceeds the benchmark." *OmniVision*, 559 F. Supp. 2d at 1047. Given the result achieved and the risks undertaken by Lead Counsel in pursuing this Action, the requested "benchmark" fee of 25% is fair and reasonable. *See, e.g., HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.,* 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (finding 25% fee award "reasonable in light of the amount of efforts expended to achieve the settlement."); *Zynga,* 2016 WL 537946, at *18 (approving 25% fee request and noting that numerous courts "have concluded that a 25 percent award was appropriate in complex securities class actions.").

### D.    A Lodestar Crosscheck Confirms the Reasonableness of the Fee Sought

In cases where attorneys' fees are sought based on a percentage of the common fund, courts in this Circuit may employ a lodestar crosscheck to assess the reasonableness of the fees sought. *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."). However, a "lodestar analysis is not necessary when the requested fee is within the accepted benchmark." *HCL Partners*, 2010 WL 4156342, at *2.  In the Ninth Circuit, "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Id.* at 1050, n.6 (28% fee award represented a

multiplier of 3.65); *see also Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding 4.3 lodestar multiplier as part of a 25% fee award); *In re Brocade Sec. Litig.*, No. 3:05-cv-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009) (awarding 25% of common fund, representing a 3.5 multiplier).

Lead Counsel has expended a total of 360.3 hours over the course of two years of investigation, litigation, and negotiation of the monetary payment reflected in the Settlement. Walker Decl. ¶ 80. Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney and professional by their current hourly rates, is $244,245.50. Walker Decl. ¶ 83. Accordingly, the requested fee of 25% of the Settlement Fund, which equates to $593,750, represents a 2.43 *Id*. ¶ 84. This is well-within the multiplier range of one to four frequently used as a crosscheck. Given the extraordinary results achieved in this challenging securities class action, Lead Counsel's 360.3 hours support the reasonableness of the fee request.

Across Lead Counsel, Partners' rates range from $800 to $1,075 per hour, associates' rates range from $550 to $700 per hour, and paralegals' rates are $280 per hour. Walker Decl. ¶ 80. These are "reasonable hourly rate[s] for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (lodestar cross-check supported the reasonableness of the requested fee award where "[t]he blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals[]"); *Roberti v. OSI Systems, Inc.*, 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8, 2015) ("Lead Counsel's attorney rates—between $525 to $975—are reasonable given that each has at least 15 years of litigation experience" except associates).

**E.      Lead Counsel's Litigation Expenses are Reasonable and Should be Approved**

Lead Counsel also requests that the Court grant its application for reimbursement of Litigation Expenses incurred in prosecuting and resolving this Action. Expenses are awarded in common fund cases where they are the type typically billed by attorneys to paying clients in the marketplace. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that 'would normally be charged to a fee paying client'"); *OmniVision*, 559 F. Supp. 2d at 1048 (same).

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel was motivated to take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. Walker Decl. ¶ 96.

As discussed in detail in the Walker Declaration, Lead Counsel incurred $27,319.38 in Litigation Expenses in litigating the Action. Walker Decl. ¶ 95. The Litigation Expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type routinely charged to hourly paying clients. These include expert fees, legal research, fact investigation, court fees, and travel and meals. A complete breakdown by category of the expenses incurred by Lead Counsel is presented in Paragraph 95 of the Walker Declaration.

The Notice provided to potential Class Members informed them that Lead Counsel intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $60,000. The amount now sought by Lead Counsel is substantially less, at $27,319.38. The deadline for objecting to the fee and expense application is June 3,

2022. To date, there have been no objections to the request for attorneys' fees or reimbursement of Litigation Expenses. Walker Decl. ¶ 61. As such, Lead Counsel's request for reimbursement of Litigation Expenses should be approved.

### F.    Lead Plaintiff Should be Awarded His Reasonable Costs Under the PSLRA

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4). Congress, in fact, intended to grant courts discretion to grant awards in appropriate cases. *See* H.R. Rep. No. 104-369, at 6 (1995) (Conf. Rep.) ("[L]ead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and [the committee] grants the courts discretion to award fees accordingly."); S. Rep. No. 104-98, at 10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement for reasonable costs and expenses (including lost wages) directly relating to representation of the class."). Consistent with the PSLRA, Lead Counsel requests that the Court approve an award for Lead Plaintiff Scott Kuhne in the amount of $5,000, to be deducted from the Settlement Fund.

Lead Plaintiff spent a significant amount of time contributing to the litigation and benefiting the class by: reviewing the relevant documents, including court filings; staying apprised of developments in the case and making himself available to Lead Counsel; providing Lead Counsel with information and materials regarding his investments; responding to document requests, and interrogatories served by Defendants; attending the ENE conference; and conferring with Lead Counsel throughout the litigation, including the ENE Conference and settlement negotiations. Walker Decl. Ex. 5 (Kuhne Decl. ¶¶ 4-5, 10). Additionally, as discussed in Section II.C.4 above, had Lead Plaintiff not retained Lead Counsel, authorized the filing of the initial complaint in this Action, and moved the Court to lead the case, the Class

would have no recovery at all as no other individual or entity sought appointment as lead plaintiff.

Numerous courts, including in this Circuit, have approved reasonable awards under the PSLRA to compensate representative plaintiffs for the time and effort they spent on behalf of a class. *See*, *e.g.*, *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award approved); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (N.D. Cal. Oct. 25, 2016) ($30,983.99 award approved); *Elkin v. Walter Inv. Mgmt. Corp.*, 2018 WL 8951073, at *2 (E.D. Pa. Dec. 18, 2018) (approving $10,000 PSLRA award for lead plaintiff). Payment of the award, when combined with Lead Counsel's expenses of $27,319.38, would not exceed the $60,000 maximum described in the Notice to the Class. *See* Cudworth Decl. Ex. A (Notice at 3).

## III.    CONCLUSION

For the reasons set forth herein, Lead Counsel respectfully requests that the Court: (i) award Lead Counsel attorneys' fees of 25% of the $2,375,000 Settlement Fund ($593,750); (ii) reimburse Lead Counsel $27,319.38 for Litigation Expenses; and (iii) approve an award pursuant to the PSLRA to Lead Plaintiff in the amount of $5,000.

May 20, 2022

**BLOCK & LEVITON LLP**

/s/ Jacob A. Walker
Jacob A. Walker (SBN 271217)
Jeffrey C. Block (admitted *pro hac vice*)
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jake@blockleviton.com
jeff@blockleviton.com

*Attorneys for Lead Plaintiff and the Proposed Class*